Jerome O. Herlihy, James A. Erisman, Dept. of Justice, Wilmington, for defendants.

**The STATE of Delaware upon the relation of Martha Verge duPONT as next friend of David Johnson et al., Plaintiffs,**

**v.**

**Albert L. INGRAM, Secretary of the Department of Health and Social Services of the State of Delaware, et al., Defendants.**

Superior Court of Delaware, New Castle.

Dec. 1, 1971.

O'HARA, Judge.

This proceeding was initiated upon petitioners' request for a Writ of Mandamus based upon the language of the then existing 11 Del.C. § 6526(a) which provided:

> "(a) Appropriate, separate custodial care and work and training facilities shall be provided for youthful offenders by the Department."

The thrust of petitioners' petition, filed on behalf of several prisoners then being housed in the State Correctional facilities in Smyrna, was to the effect that the Department of Health and Social Services (hereinafter "Department") was not complying with the above statute in connection with its responsibility for providing ap-

propriate facilities for youthful offenders. After a hearing the Court determined that the Department was not complying with the statute and pursuant to said determination ordered that appropriate facilities be provided within 90 days for youthful offenders. The statute being silent as to definition of youthful offender, the Court found it necessary at that time to define the meaning of that term. The relevant provisions of the order of the Court at that time read as follows:

1. Within 90 days from the date hereof, defendant Department is ordered to provide appropriate separate work, custody, training and treatment facilities for youthful offenders within the meaning of 11 Del.C. § 6526(a);

2. Unless Department has substantially complied after 90 days from the date of this order, the attorney for relator is directed to present an order releasing youthful offenders from custody.

3. "Youthful offender" for purposes of this order, means all offenders who have not reached the age of 18 years, and such older offenders, not over the age of 21 years, as the Department considers to be amenable to a program directed to youthful offenders."

Thereafter the defendants moved to vacate the judgment of the Superior Court largely on the basis of the subsequent enactment of legislation which amended § 6526(a). As amended the statute now reads:

"(a) appropriate, separate custodial care and work and training facilities shall be provided for youthful offenders by the Department, *subject to the limitations of existing structures, staff and appropriations."* (Emphasis added)

This new legislation also specifically defined a youthful offender as "any offender requiring incarceration who has not reached his eighteenth birthday."

■ Further hearing was had in connection with the defendants' petition at which time the original petitioners raised a number of constitutional objections to the validity of the newly enacted legislation. It is axiomatic that the Court will not determine the constitutionality of a statute unless this is essential to the determination of the issues before the Court. For reasons hereinafter set forth the Court concludes that in this instance it is not required to rule upon the constitutional questions which have been raised.

In the Court's original order it was attempting to define youthful offenders as those prisoners who were under the age of 18 years and required that the Department comply with the requirements of the statute in providing separate facilities for such individuals. In further attempting to ameliorate a difficult, practical situation the Court went further in its definition of youthful offender to provide that prisoners above the age of 18 years, but below the age of 21 years, could be included in any separate program designed for youthful offenders if the Department would determine that some or all of the prisoners in its custody in that age category could fit into such program. It was not the intention of the Court to expand the definition of youthful offender to include all those 21 years of age or under but simply to provide that the terms of the statute pertaining to those under 18 years would be met even though facilities provided for those inmates also included some prisoners between the ages of 18 and 21 years.

Much of the testimony presented at the second hearing in this matter related to the number of prisoners between the ages of 18 and 21 years and the practical difficulties the Department faced in providing separate facilities for these inmates as well as those under 18 years. The Court herein concludes that while this evidence was of great interest and of practical value

to the proper administration of our prisons, it is not germane to the only issue before the Court, i. e., the facilities being provided for offenders under the age of 18 years. In this last respect the uncontroverted evidence indicated that all such offenders were, in fact, being housed outside of the Smyrna facilities and in facilities specifically designed for offenders under the age of 18 years.

▆ In short, between the date of the Court's original order of May 27, 1971 and the date of the subsequent hearing, the Department had, in fact, provided separate facilities for youthful offenders in its custody. Whether these facilities are adequate and sufficient is not before the Court at this time. The only issue is whether or not the Department has met its responsibility under the provisions of the statute, whether one applies the old or the new statute. The Court believes that this responsibility has been met and having reached this conclusion believes that the best interest of all will be served by vacating the judgment of this Court dated May 27, 1971.

It is so ordered.