**STATE of Delaware**
**v.**
**Jesse NICHOLSON, Jr., Defendant.**

Superior Court of Delaware,
New Castle.

March 4, 1975.

Jeffrey M. Weiner, Charles Brandt, Dept. of Justice, Wilmington, for the State.

Ernest S. Wilson, Jr., Esq., Wilson & Russell, Wilmington, for defendant.

## OPINION

WALSH, Judge.

On March 30, 1972, the defendant who was then seventeen years of age was convicted, after a jury trial, of murder in the first degree. On April 21, 1972, Judge (now Justice) John J. McNeilly sentenced the defendant to life imprisonment. Judge McNeilly also committed the defendant:

> "to the Division of Youthful Offenders for placement by that Division in whatever Department administratively they feel is best suited for his incarceration. Upon attaining the age of adult offender, the defendant shall be transferred to the Division of Adult Corrections for the purpose of carrying out the balance of this sentence".

On May 19, 1972, Judge McNeilly modified the sentence by adding the following provision:

> The phrase "becomes of age" should be stricken and modified to read "be-

comes twenty-one years of age" or until such time as this Court orders otherwise after reaching the age of eighteen in the Court's discretion.

Since the time of his sentencing, the defendant, who will become twenty-one years of age on June 15, 1975, has been incarcerated at the Delaware Youth Center, a facility operated by the Division of Juvenile Corrections, under the jurisdiction of the Department of Health and Social Services (the Department). On January 2, 1975, the Attorney General filed a motion in this Court to effect the transfer of the defendant from the Division of Juvenile Corrections to the Division of Adult Corrections on the ground that defendant is not a youthful offender as that term has been legislatively defined. The defendant, through counsel, opposes the motion to transfer custody asserting that he has been properly assigned by the Department to a facility provided by the General Assembly for offenders of his class. After the filing of counter memoranda this is the decision on the State's motion to transfer custody.

■ Initially, the defendant opposes the State's motion on the ground that it represents an effort to amend a final criminal judgment more than three years after it was entered. While it is open to serious question whether the State is ever foreclosed from questioning the manner in which correctional authorities discharge Court-mandated incarceration because of its continuing nature, it is unnecessary to grapple with the question of finality. Judge McNeilly, in both his original sentence and in his later modification, contemplated that a change in defendant's place of incarceration would occur after defendant reached eighteen years of age. He expressly authorized a change of status "in the Court's discretion". The State, of course, denies that any area of discretion exists in the manner of defendant's incarceration, asserting that the matter is one of statutory direction. It matters little in what context the issue is raised since the

statutory framework upon which the State builds its argument predated Judge McNeilly's original sentence and has been unmodified since. Simply stated the question is: May a defendant who is sentenced to a term of imprisonment which extends beyond his eighteenth birthday remain in the custody of the Division of Juvenile Corrections after attaining that age? I conclude that he may not.

In Delaware, the manner of incarceration of sentenced offenders is, for the most part, statutorily established and the General Assembly may without constitutional infringement limit the Court's post-conviction authority over both the manner and method of incarceration. State v. Flowers, Del.Sup., 330 A.2d 146 (1974). While in the first instance the Court, with few exceptions, is charged with establishing the duration of imprisonment, custody of the defendant is given to an appropriate branch of the Department of Health and Social Services subject to the limitation that "separate custodial care and work and training facilities [be provided] for youthful offenders". (11 Del.C. § 6526(a)). This limitation became effective in 1964 as part of the Act establishing the State Department of Corrections. The functions and responsibilities, including custody of persons in its control, of the Department of Corrections were transferred to the newly created Department of Health and Social Services upon its creation in 1969.

In State Ex rel. duPont v. Ingram, Del. Super., 294 A.2d 839 (1971) Judge O'Hara traced the brief history of a judicial attempt to require separate correctional facilities for persons over eighteen years of age. The Court, in a previous order of May 27, 1971, had construed the term "youthful offender" as embraced in Section 6526(a) to include all offenders between the age of eighteen and twenty-one and ordered the establishment of separate custodial facilities for them. The Court

noted that the term "youthful offender" had theretofore lacked statutory definition. On June 25, 1971, in obvious reaction to the Court's attempt to remedy that lack, the Governor approved House Bill 427 (58 Del.Laws ⌐h. 172) which provided in part:

"'Youthful Offender' means any offender requiring incarceration who has not reached his eighteenth birthday."

The authority of the General Assembly to engraft an automatic age of classification was considered by the Supreme Court on appeal of *Ingram* (293 A.2d 289) as neither *ex post facto* nor arbitrary. The Court stated:

"Practical necessity makes such automatic classifications unavoidable. While automatic classification of the individual, based upon chronological act alone leaves much to be desired, it cannot be said that it rises to constitutional proportions of unreasonableness or arbitrariness on the part of the General Assembly in this case."

Defendant does not seriously dispute the combined effect of the 1971 legislative definition and the judicial approval which followed. Instead, he fashions an argument based on subsequent legislative enactments in the area of juvenile corrections and establishment of the age of majority to urge that the General Assembly did not really intend the face value of the language it selected. First, he maintains that the same legislation which implanted the age classification also enjoined the Department to undertake a study of criteria relevant to the placing of persons in treatment programs with one criterion being that of age. Secondly, he points to the passage of a supplemental appropriation enacted on July 1, 1971, establishing the Delaware Youth Center for "juvenile offenders . . . who are sophisticated, aggressive, seriously disturbed and difficult to manage" and who "require separation from adult offenders". Finally he notes that the

new "age of majority" law (58 Del.Laws Ch. 511) enacted on July 12, 1972 intentionally omitted reference to the Delaware Youth Center.

■ Defendant has noted the lack of consistency in the legislative approach to the classification of non-adults. The legislative attempt to provide a harmonious and integrated corrections system for offenders of all ages is not without its ambiguities. This is the transitional result of engrafting a new administrative state-wide system of corrections upon a county oriented program of many years duration. These considerations, however, beg the question, which is what custodial arrangement the General Assembly intended for offenders beyond the age of eighteen. Both the express language and the obvious legislative history of 1971 amendment to § 6502 lead to only one conclusion: the age of eighteen is one of automatic classification beyond which an offender is no longer a "youthful offender".

■ While it is true that the 1971 legislative enactment which contained the explicit definition of "youthful offender" charged the Department with formulating a plan for separation of prisoners based on six factors, including the age of the offender, it does not follow that the General Assembly was diluting the effect of its own definition. Such a plan may effect a change in the future custodial framework. But until a change is forthcoming the present mandate must be accepted at face value. Legislative language is interpreted on the assumption that the legislature is aware of existing judicial decisions. Scribner v. Chonofsky, Del.Ch., 310 A.2d 924 (1973). Indeed, when the timing of the initial *Ingram* decision is considered, the 1971 legislation was based not on mere awareness but on immediate reaction.

■ Defendant's argument that the General Assembly in adopting a new age of majority in 1972 retreated from its 1971 definition is based upon a strained construction of the Act. Defendant notes that the original "age of majority" bill contained a section which modified the authority of the Youth Service Commission (now the Division), as contained in 31 Del.C. § 5122, to retain custody of persons by reducing the effective age from "twenty-one" to "eighteen". This provision was stricken from the bill as finally adopted and defendant argues that this was implicit legislative approval of the retention by the Division of Youthful Offenders of persons beyond age eighteen. Section 5122 of Title 31, however, deals with offenders committed to the Commission (Division) by the Family Court after an adjudication of delinquency and authorizes the Commission (Division) "in its discretion" to discharge any such person if it determines such discharge "to be, for the best interests of the juvenile or the Commission." This section can have no application to a person sentenced in the Superior Court to a specific period of imprisonment extending beyond his twenty-first birthday.

Defendant's position is based upon the principle of implied repealer—a construction not favored nor easily sustained. Wife R. v. Husband R., Del.Super., 310 A. 2d 877 (1973). As previously noted, while the General Assembly has not charted a "straight-line course" in this area, its intention remains clear enough for judicial interpretation. In 1971, it defined "Youthful Offender" to exclude persons over "eighteen years of age". I am satisfied that it has not effectively modified that definition.

■ Finally, defendant argues that no change in his custody should take place because he has been continuously in the custody of the Department since the time of his sentencing and the Department has authority to transfer him to either of its corrections components: Youth or Adult,

as it deems appropriate and such transfer should not be a matter of judicial determination. Whatever the factors which favor retention of defendant in the Delaware Youth Center neither this Court nor the Department have been given the option of weighing their merits. If, as the Supreme Court noted in *Ingram,* the classification is automatic what option remains with the Department? If the defendant is no longer a youthful offender, the Department no longer has any discretion concerning the place of his incarceration. Whether this be the course most productive from a rehabilitative or social perspective is immaterial. The legislative mandate is clear and since, as *Ingram* notes, it offends no constitutional norms, it must be obeyed.

As required by operation of law the defendant, having obtained the age of eighteen is ordered transferred to the Division of Adult Corrections for the balance of his sentence.

It is so ordered.