FIAT MOTORS OF NORTH AMERICA, INC., and Affiliated FM Insurance Company, Plaintiffs in Federal Court,

v.

MAYOR AND COUNCIL OF the CITY OF WILMINGTON, Department of Commerce of the City of Wilmington, Board of Harbor Commissioners of the Port of Wilmington, E. I. Du Pont de Nemours & Company, and American Auto, Inc., Defendants in Federal Court.

Supreme Court of Delaware.

Submitted: April 23, 1985.

Decided: Sept. 9, 1985.

J.R. Julian, Wilmington, and Henry J. Catenacci (argued), of Podvey, Sachs & Catenacci, Newark, N.J., for plaintiffs in Federal Court.

David E. Brand (argued), of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendants in Federal Court.

Before McNEILLY, HORSEY, and CHRISTIE, JJ.

CHRISTIE, Justice.

The Federal Court for the District of Delaware has certified three questions for review by this Court. The questions presented call for a determination of the impact which the Municipal Tort Claims Act, 10 *Del.C.* §§ 4010–4013, (hereinafter the Act) has had upon the law of municipal immunity in Delaware.

I.

Fiat Motors of North America, Inc. (hereinafter Fiat) imports and sells automobiles in the United States. In January of 1974, the City of Wilmington agreed to lease approximately 30 acres of property at the Wilmington Marine Terminal to Fiat for the processing, servicing and storage of its imported automobiles prior to their shipment to Fiat dealers in the United States. Pursuant to the lease executed between the parties, Fiat agreed to pay the City of

Wilmington an annual rent of approximately $193,000, plus an annual adjustment to be based upon the wholesale price index.

On October 25, 1980, a severe rain storm caused flooding at the Marine Terminal. As a result of this storm, Fiat suffered a loss of over ten million dollars in damages to the vehicles parked there during the storm. The City had previously obtained one million dollars in insurance coverage for any tort liability on its part, and Fiat had obtained insurance coverage of ten million dollars. Apparently, Fiat's carrier, through Fiat, seeks to recover from the City's carrier and from the City the sums it has paid to Fiat as compensation for the loss. Fiat also seeks to recover for any part of its loss not covered by its own insurance.

Fiat and its insurer instituted a suit in Delaware Federal District Court against the City of Wilmington, alleging, *inter alia*, negligence on the part of the City. The City claimed that, even if it had been negligent, it was immune from liability under the provisions of the Act. The City moved for summary judgment on these grounds. Plaintiffs challenged the City's claim of immunity on two grounds. They initially contended that because the City acted in its proprietary capacity (as opposed to its governmental capacity) in leasing the parking facilities, any negligent conduct of the City was beyond the protection of municipal immunity. Plaintiffs also claimed that the City's purchase of liability insurance for activities, which might otherwise be subject to municipal immunity under the statute, constituted an implied waiver of municipal immunity.

The Federal District Court considered the briefs of the parties and heard oral argument on the City's motion for summary judgment. It was at the oral argument that Judge Wright suggested the certification of the issues of State law to this Court. *See* Del. Const. art. IV, § 11(9);[1] Supreme Court Rule 41(a).[2] In its unreported memorandum of decision dated February 27, 1985, the District Court, 619 F.Supp. 29, discussed the legal issues before it in detail. The court expressed views on some of the issues, and concluded that, in view of the unsettled state of Delaware decisional law as to municipal immunity and in view of the broad impact which a ruling defining the scope of municipal immunity would have in Delaware, certain questions should be certified to this Court.

The following are the three questions which were certified to this Court, and this Court's answers thereto:

Question 1: Does the County and Municipal Tort Claims Act,[3] 10 *Del.C.* §§ 4010–4013, render a municipality immune from liability for its negligent acts or omissions when the municipality is acting in a proprietary capacity?

Answer: Yes, except as otherwise provided in § 4012 or "otherwise expressly provided by statute" under § 4011(a).

Question 2: Does the County and Municipal Tort Claims Act, 10 *Del.C.* §§ 4010–4013, prohibit a municipality from waiving its statutory immunity?

Answer: Yes.

---

**1.** Del. Const. art. IV, § 11. *Jurisdiction of Supreme Court.*

Section 11. The Supreme Court shall have jurisdiction as follows:

 \* \* \* \* \* \*

(9) To hear and determine questions of law certified to it by other Delaware courts and the United States District Court for the District of Delaware where it appears to the Supreme Court that there are important and urgent reasons for an immediate determination of such questions by it. The Supreme Court may by rules define generally the conditions under which questions may be certified to it and prescribe methods of certification.

**2.** Supreme Court Rule 41(a) provides that:

(a) *Who May Certify.* Any state court and the United States District Court for the District of Delaware may, on motion or sua sponte, certify to this Court for decision a question of law arising in any case before it prior to the entry of final judgment if there is an important and urgent reason for an immediate determination of such question by this Court.

**3.** See Appendix for full text of the Act.

Question 3: Does a municipality's purchase of insurance that provides the municipality with protection against liability for activities beyond the scope of the exceptions enumerated in 10 *Del.C.* § 4012 constitute an implied waiver of the municipality's statutory immunity under 10 *Del.C.* § 4011 of the County and Municipal Tort Claims Act?

Answer: No.

We shall now briefly discuss these questions and explain our answers.

## II.

In Delaware, the general rule has always been that a municipality is immune from suit for its negligent acts or omissions unless such immunity has been modified or waived by statute. *Varity Builders, Inc. v. Polikoff,* Del.Supr., 305 A.2d 618 (1973); *Shellhorn & Hill, Inc. v. State,* Del.Supr., 187 A.2d 71 (1962); *Flait v. Mayor & Council of Wilmington,* Del.Supr., 97 A.2d 545 (1953), *overruled in, City of Wilmington v. Spencer,* Del.Supr., 391 A.2d 199 (1978). Prior to the passage of the Act, the legislature had never specifically modified this rule or provided for a waiver of municipal immunity. However, there was an exception to the general rule of municipal immunity which had already been engrafted as part of our common law when we adopted the rule from England. *See Flait,* 97 A.2d at 545–6. This exception provided that when a municipality was operating in a proprietary capacity, its activities were not immune from liability because the municipality was functioning outside its traditional role. Only when the municipality was performing a governmental service were its activities immune. *Spencer,* 391 A.2d 199; *Wilmington Housing Authority v. Williamson,* Del.Supr., 228 A.2d 782 (1967).

This distinction has been consistently applied in Delaware courts up until the passage of the Act in 1979. The rule, which depends for its proper application upon the distinction between proprietary and governmental acts, is difficult to apply. In fact,

the rule has been criticized as "illogical" and "unsatisfactory" by Delaware courts and recognized as "inherently unsound" by the United States Supreme Court. *See Williamson,* 228 A.2d at 786; *Flait,* 97 A.2d at 546; *Indian Towing Company v. United States,* 350 U.S. 61, 65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955).

The question which has been framed by the District Court is "whether the Act 'eliminated the exception to sovereign immunity for the proprietary activities of a municipality.'"

Plaintiffs assert that any interpretation of the Act which would do away with the distinction between governmental and proprietary functions, would in turn lead to an improper extension of the doctrine of municipal immunity to include activities which were not immune even at common law. Plaintiffs contend that any legislative extension of the doctrine in derogation of the common law, must be strictly (i.e., narrowly) construed by our courts. *Pajewski v. Perry,* Del.Supr., 363 A.2d 429 (1976); *Spencer,* 391 A.2d 199.

This Court must endeavor to discern the legislative intent as expressed in the words of the Act, in light of the circumstances under which the Act was adopted. In reaching our conclusion, we are cognizant of the common law, as it existed before the Act was passed. However, our reading of the entire statute and our attempt to make a harmonious whole of the various sections thereof, leads us to conclude that the Act completely redefined municipal immunity. See *Nationwide Insurance Co. v. Graham,* Del.Supr., 451 A.2d 832, 834 (1982); *State v. Nicholson,* Del.Super., 334 A.2d 230, 233 (1975).

The Act was not a mere alteration of the doctrine of municipal immunity. In the process of recodification of the doctrine, the General Assembly extended municipal immunity to areas where it did not formerly apply. In so doing, the General Assembly sought to simplify and clarify the law to overcome recent decisions limiting municipal immunity and to extend such immu-

nity. *Id.* We base this conclusion on several factors.

The first indication that the legislature intended to terminate the traditional governmental/proprietary distinction is contained in the clear and unambiguous language of § 4011(a), which reads as follows:

> Except as otherwise explicitly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages. That a governmental entity has the power to sue or be sued, whether appearing in its charter or statutory enablement, shall not create or be interpreted as a waiver of the immunity granted in this subchapter.

The first sentence clearly states that municipalities and their employees will be immune from liability for any torts committed, unless "... otherwise expressly provided by statute ...." It is clear that the distinction between governmental and proprietary functions was ancient judge-made law. This distinction not only finds no legislative support in Delaware, but it has now been abolished by statute insofar as it applies to municipalities.

However, plaintiffs contend (and the District Court seems to suggest) that the very broad scope of immunity established in the first sentence of § 4011(a) is narrowed by the more specific statements in the second sentence of the statute (quoted above).

There is no doubt that this second sentence was intended to make it clear that the statute changed the law set forth in this Court's rulings in *Varity Builders, Inc. v. Polikoff,* Del.Supr., 305 A.2d 618 (1973) and *City of Wilmington v. Spencer,* Del.Supr., 391 A.2d 199 (1978). In these cases this Court had held that various enabling provisions contained in the Home Rule statutes [4] operated so as to waive municipal immunity.[5]

The first statement of § 4011(a) sets forth a broad rule of municipal immunity and provides that henceforth this can be modified only by statute. This Court's prior opinions in *Varity* and *Spencer* had construed statutory enabling provisions as evidencing a legislative intent to waive, respectively, county and municipal immunity for the performance of governmental functions. Since the legislature desired to overrule those decisions (as it stated in the preamble), it was necessary to make the additional declaration that the *statutory* language contained in such enabling provisions was not to be construed as a waiver of municipal immunity. We are of the opinion that the addition of the second sentence of § 4011(a) serves an independent function. It does not limit the scope of the first sentence.

■ In our view, the provisions of §§ 4011(b) [6] and 4012 [7] tend to provide addi-

---

**4.** The enabling provision, 9 *Del.C.* § 1101, provides that the county "shall presume and have all powers which, under the constitution of the State, it would be competent for the General Assembly to grant by specific enumeration, and which are not denied by statute...." The City charter contains similar language.

**5.** This analysis is consistent with the legislative statements contained in the preamble, which indicate dissatisfaction with the Court's recent rulings on municipal immunity.

**6.** § 4011(b) provides:

Notwithstanding § 4012 of this title, a governmental entity shall not be liable for any damage claim which results from:

(1) The undertaking or failure to undertake any legislative act, including, but not limited to, the adoption or failure to adopt any stat-

ute, charter, ordinance, order, regulation, resolution or resolve.

(2) The undertaking or failure to undertake any judicial or quasi-judicial act, including, but not limited to, granting, granting with conditions, refusal to grant or revocation of any license, permit, order or other administrative approval or denial.

(3) The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation or resolve under which the discretionary function or duty is performed is valid or invalid.

(4) The decision not to provide communications, heat, light, water, electricity or solid or liquid waste collection, disposal or treatment services.

tional support for a ruling that § 4011(a) was intended to terminate the common law distinction between proprietary and governmental functions and to provide a new and broader scope of municipal immunity.

We note that § 4011(b) lists specific examples of activities which are to be subject to municipal immunity, notwithstanding the exceptions to the broad rule of municipal immunity which are set forth in § 4012. Included within that list are three activities (§ 4011(b) 1–3), which had generally been considered to be legislative, judicial, or discretionary functions and have always been immune. *See* McQuillan, The Law of Municipal Corporations § 53.22 (3d ed. 1984). By contrast, the activities listed in § 4011(b) 4–6, as subject to municipal immunity, involve those areas of governmental performance which made the common law distinction difficult to apply. By including these activities in its list of activities to which municipal immunity applies, the legislature has made it doubly clear that despite any previous categorization of these activities, they will henceforth constitute activities for which a municipal government is immune.

In § 4012 the legislature has listed the activities for which a municipal government is not to have immunity. This list includes those activities which were typically considered to be the high risk activities as to

which the individual citizen should have a right to sue. Significantly, the General Assembly did not state that the list of these exceptions to immunity was non-exclusive, as it did with regard to the list of examples of immune activities, set forth in § 4011(b). In view of these statutory provisions, and in the absence of an explicit statute indicating otherwise, the activities listed in § 4012 are the only activities as to which municipal immunity is waived.

Any attempt to retain the distinction between governmental and proprietary activities, while simultaneously applying the general and explicit provisions found in §§ 4011 and 4012, would serve to recreate the very problems the General Assembly sought to avoid.

We are aware that the doctrine of municipal immunity (and the doctrine of State sovereign immunity) has been criticized by our courts for a number of years. This Court has examined and explored the injustices inherent in such a doctrine. *City of Wilmington v. Spencer*, Del.Supr., 391 A.2d 199 (1978); *Shellhorn & Hill, Inc. v. State*, Del.Supr., 187 A.2d 71 (1962); *Flait v. Mayor & Council of Wilmington*, Del. Supr., 97 A.2d 545 (1953). The Court has repeatedly called upon the legislature to supply some relief from the injustices which such immunity may inflict upon

---

(5) The discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, except as provided in subdivision (3) of § 4012 of this title.
(6) Any defect, lack of repair or lack of sufficient railing in any highway, townway, sidewalk, parking area, causeway, bridge, airport runway or taxiway, including appurtenances necessary for the control of such ways including but not limited to street signs, traffic lights and controls, parking meters and guardrails
Paragraphs (1)—(6) of this subsection to which immunity applies are cited as examples and shall not be interpreted to limit the general immunity provided by this section.

**7.** § 4012. *Exceptions to immunity.*

A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:
(1) In its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.
(2) In the construction, operation or maintenance of any public building or the appurtenances thereto, except as to historic sites or buildings, structures, facilities or equipment designed for use primarily by the public in connection with public outdoor recreation.
(3) In the sudden and accidental discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

wronged private citizens. *Id.* The legislature has responded with the passage of the Act. It is the Court's duty to interpret the Act as it is written, rather than to use the Act to perpetuate theories or views which may previously have been expressed by the Court. It will be for the General Assembly to decide if the protection, and the lack of protection, afforded by this Act creates a fair balance between the rights of individuals and the interests of society in general, as represented by municipal entities.

As we have indicated, our interpretation of the Act leads us to the conclusion that the General Assembly intended to dispense with the common law distinction between governmental activities and proprietary activities of municipal entities. We do not envision this act as an unjustified or improper extension of municipal immunity.[8]

### III.

We have previously noted in our factual recitation of this case that the City of Wilmington had secured one million dollars in insurance covering activities which are subject to municipal immunity under § 4011 of the Act. The District Court has posed two questions to this Court which stem from the City's purchase of such insurance. The first question asks whether the Act prohibits a municipality from waiving immunity; while the second seeks to determine whether the City's purchase of insurance, covering activities to which § 4011 municipal immunity applies constituted an implied waiver of municipal immunity.

■ Once again our analysis must begin with the basic proposition that only the legislature can provide for the waiver of municipal immunity. 10 *Del.C.* § 4011(a); *Shellhorn,* 187 A.2d 71 (1962); *Flait,* 97 A.2d 545 (1953). We read nothing in the Act itself which indicates an intention by the legislature to allow a municipality to waive its immunity. To the contrary, § 4011(a) states that municipalities shall be immune from all tort claims "[e]xcept as otherwise expressly provided by statute ...." We also note that the preamble to the Act indicates the legislative intent to re-establish the principle of municipal immunity in light of the number of frivolous claims and escalating insurance costs. Such an intent is inconsistent with the idea that a municipality's purchase of insurance will invoke waiver.

Plaintiff points to our previous decisions in *Pajewski v. Perry,* Del.Supr. 363 A.2d 429 (1976) and *City of Wilmington v. Spencer,* Del.Supr. 391 A.2d 199 (1978), to

---

**8.** Plaintiffs argue that if the legislature intended to abandon the common law distinction it would have done so explicitly. They point out that several jurisdictions have done just that. *See* Okla.Stat. tit. 51 §§ 151 *et seq.;* Tenn.Code Ann. §§ 29–20–101 *et seq.* (which provided for governmental immunity whether the functions performed were governmental or proprietary). We note that other jurisdictions which have maintained the distinction have also done so explicitly. *See* Mo.Ann.Stat. § 537.600 (which preserved immunity as it existed at common law). Unfortunately, Delaware's statute does not directly address this particular dilemma.

Delaware's act was "... closely modeled after legislation enacted in the State of Maine." 62 Del.Law, c. 124, § 2 (House Bill #523); *see* Maine's Municipal Tort Claims Act, Me.Rev.Stat. Ann. 14 § 8101 *et seq.* The language contained in Maine's statute is similar to Delaware's Act. The problems which the Maine legislature were facing prior to the enactment of the Act were also similar. The doctrine of municipal immunity had been criticized by the courts for fifteen years prior to the passage of the Act. The governmental/proprietary distinction had been used by the courts but was not favored. *See generally* Martin, Common Law Sovereign Immunity and the Main Tort Claims Act: A Rose By Another Name, 35 Me.L.Rev. 265 (1983). The legislature finally acted, only after the Supreme Court of Maine had actually abrogated the doctrine. *Davies v. City of Bath,* Me.Supr., 364 A.2d 1269 (1976).

The language of the Maine Act did not directly address the vitality of the governmental/proprietary distinction either. However, in all the decisions which we could find since the date of that Act, the distinction has not been mentioned and is generally thought to have been discarded by the passage of the Maine Tort Claims Act. *See* 35 Me.L.Rev. at 288; *Goodine v. State,* Me. Supr., 468 A.2d 1002 (1983); *McNally v. Town of Freeport,* Me.Supr., 414 A.2d 904 (1980). Courts have only applied the strict language of the statute itself in deciding whether an activity is immune or is not. We shall do likewise.

support his contentions. He argues that these cases were correctly applied by the District Court of Delaware in *Hedrick v. Blake*, 531 F.Supp. 156 (D.Del.1982), which indicated in dicta that a municipality's purchase of insurance constituted a waiver of its immunity as to the risks thereby covered, even after the adoption of 10 *Del.C.* § 4011(a).

In important but unreported cases, the Superior Court of Delaware has twice decided that the dicta in the *Hedrick* decision involved an erroneous application of Delaware law. This case represents the first occasion in which this Court has been called upon to interpret 10 *Del.C.* § 4011(a), and it is clear from what we have said that we do not agree with the holding in the *Hedrick* case.

In this Court's decision in *Pajewski*, we were called upon to determine the scope of the *State's* immunity in light of 18 *Del.C.* § 6511, which states that "[t]he defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the State insurance program ...." We held that the *State's* sovereign immunity was presumptively waived by 18 *Del.C.* § 6511, unless the Insurance Coverage Determination Committee adequately demonstrated why the State had failed to meet its responsibilities under 18 *Del.C.* Ch. 65. The case was remanded for a more detailed examination of the pertinent facts.

It is argued that the Court's holding in *Pajewski* was extended to include municipalities in *City of Wilmington v. Spencer*, 391 A.2d at 201 n. 2. In dicta contained in a footnote this Court said:

> We note with approval that the State, by enactment of a State insurance program, 18 *Del.C.* § 6501, etc., has provided for waiver of immunity in § 6511, thus:
>
> > The defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the State insurance coverage program, whether same be covered by commercially procured insurance or by self insurance, and every commercially procured in-

surance contract shall contain a provision to this effect, where appropriate. *See Pajewski v. Perry, supra,* 363 A.2d at 432. And the record in this case shows that the City has insurance coverage which may indemnify it for liability arising from this litigation.

■ We do not, and indeed cannot, read such dicta as extending the presumptive immunity to municipalities. The provisions of 18 *Del.C.* § 6511 waive only those risks covered by the State Insurance Coverage Program, which pertains only to State owned property, State officials, and State employees. There is no similar legislation pertaining to a waiver of municipal immunity. Furthermore, since the decision in the *Spencer* case, the General Assembly has enacted legislation which specifically broadens municipal immunity. 11 *Del.C.* §§ 4010–4013.

We hold that under the current statute a municipality cannot waive its immunity unless it has explicit statutory authority to do so. This authority must come from the General Assembly, and it has not granted any such authority. Because a municipality cannot, on its own, waive its immunity, the City's purchase of insurance did not result in a waiver of municipal immunity.

\* \* \* \* \* \*

For the reasons stated, the answers to the certified questions will be as listed.

### APPENDIX

The County and Municipal Tort Claims Act as originally enacted in 62 Del.Laws ch. 124 (July 5, 1979) reads as follows:

AN ACT TO AMEND TITLE 10, CHAPTER 40 OF THE DELAWARE CODE BY ADDING NEW PROVISIONS TO THE TORT CLAIMS ACT REESTABLISHING THE PRINCIPLE OF SOVEREIGN IMMUNITY FOR COUNTIES AND MUNICIPALITIES THROUGHOUT THE STATE OF DELAWARE.

WHEREAS, the Courts of the State of Delaware have recently reversed precedent

and have pronounced that the counties and certain municipalities of the State of Delaware no longer are protected by the Constitutional defense of sovereign immunity; and

WHEREAS, the provision of vital local governmental services is thereby placed in substantial jeopardy by the Courts' decisions; and

WHEREAS, the cost of insurance, when obtainable, has reached proportions unanticipated by local government as a result of the multiplicity of lawsuits filed against local governments in recent years.

NOW, THEREFORE:

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF DELAWARE (Two-thirds of all members elected to each House thereof concurring therein):

Section 1. Amend Chapter 40, Title 10, Delaware Code, by denominating its current provisions, Sections 4001 through 4005, inclusive, as "Subchapter I., State Tort Claims".

Section 2. Amend Chapter 40, Title 10, Delaware Code, by adding thereto a new Subchapter II., entitled "County and Municipal Tort Claims", to read as follows:

"SUBCHAPTER II. COUNTY AND MUNICIPAL TORT CLAIMS

§ 4010. *Definitions*

As used in this subchapter, unless the context otherwise indicates, the following words shall have the following meanings:

(a) 'Employee'. 'Employee' means a person acting on behalf of a governmental entity in any official capacity, whether temporarily or permanently, and whether with or without compensation from local, state or federal funds, including elected or appointed officials, volunteer firefighters, and rescue squad members where the rescue squad receives full or partial financial support from political subdivisions or from the State of Delaware, but the term 'employee' shall not mean a person or other legal entity acting in the capacity of an independent contractor under contract to the governmental entity.

(b) 'Governmental Entity'. 'Governmental Entity' means any municipality, town, county, administrative entity or instrumentality created pursuant to Title 22, Chapter 8 or Title 9 of the Delaware Code, any municipality created by a special act of the Delaware General Assembly, any housing authority created pursuant to Title 31, Chapter 43 and any parking authority created pursuant to Title 22, Chapter 5 of the Delaware Code, and all registered volunteer fire companies and volunteer rescue squads.

§ 4011. *Immunity from Suit*

(a) 'Immunity'. Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages. That a governmental entity has the power to sue or be sued, whether appearing in its charter or statutory enablement, shall not create or be interpreted as a waiver of the immunity granted in this subchapter.

(b) 'Examples'. Notwithstanding § 4012, of this Chapter, a governmental entity shall not be liable for any damage claim which results from:

(1) The undertaking or failure to undertake any legislative act, including but not limited to, the adoption or failure to adopt any statute, charter, ordinance, order, regulation, resolution or resolve.

(2) The undertaking or failure to undertake any judicial or quasi-judicial act, including but not limited to, granting, granting with conditions, refusal to grant or revocation of any license, permit, order or other administrative approval or denial.

(3) The performance of failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute, charter, ordinance, order, reso-

 lution, regulation, or resolve under which the discretionary function or duty is performed is valid or invalid.

(4) The decision not to provide communications, heat, light, water, electricity or solid or liquid waste collection, disposal or treatment services.

(5) The discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines, toxic chemicals, liquids or gases, waste materials or other irritants, contaminents or pollutants into or upon land, the atmosphere or any water course or body of water, except as provided in § 4012(c) of this Chapter.

(6) Any defect, lack of repair or lack of sufficient railing in any highway, town way, sidewalk, parking area, causeway, bridge, airport runway or taxiway, including appurtenances necessary for the control of such ways including but not limited to street signs, traffic lights and controls, parking meters and guardrails.

Paragraphs 1 through 6 of this subsection to which immunity applies, are cited as examples and shall not be interpreted to limit the general immunity provided by this section.

(c) 'Personal Liability and Immunity'. An employee may be personally liable for acts or omissions causing property damage, bodily injury, or death in instances in which his or her governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

## § 4012. *Exceptions to Immunity*

A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:

(a) In its ownership, maintenance of use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.

(b) In the construction, operation, or maintenance of any public building or the appurtenances thereto, except as to historic sites or buildings, structures, facilities or equipment designed for use primarily by the public in connection with public outdoor recreation.

(c) In the sudden and accidental discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalines, and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

## § 4013. *Limitation on Damages*

(a) 'Limit Established'. In any action for damages permitted by this subchapter, the claim for and award of damages, including costs, against both a political subdivision and its employees shall not exceed $300,000 for any and all claims arising out of a single occurrence.

(b) 'Procedures'. Any governmental entity may settle claims filed against it pursuant to § 4012, of this Chapter, in accordance with procedures duly promulgated by its governing body.

(c) 'Notice of Claim'. Any political subdivision may enact a notice requirement by ordinance so long as said notice requirement does not bar suit if notice is given within one year of occurrence."
Approved July 5, 1979.

Section 4013(a) was amended effective July 20, 1984 to read:

In any action for damages permitted by this subchapter, the claim for and award of damages, including costs, against both a political subdivision and its employees, shall not exceed $300,000 for any and all claims arising out of a single occurrence, except insofar as the political subdivision elects to purchase liability insurance in excess of $300,000 in which event the limit of recovery shall not exceed the amount of the insurance coverage.