Joseph M. WALLS, Plaintiff
Below, Appellant,

v.

Scott REES, New Castle County Depart-
ment of Police, and New Castle County
Department of Public Safety, Defen-
dants Below, Appellees.

Supreme Court of Delaware.

Submitted: July 6, 1989.
Decided: Jan. 8, 1990.

Joseph M. Walls, pro se.

Donald E. Marston, First Asst. County Atty., Wilmington, for appellees.

Before CHRISTIE, Chief Justice, HORSEY, and HOLLAND, Justices.

CHRISTIE, Chief Justice.

This is an appeal from an order of Superior Court granting summary judgment in favor of defendants in a claim against New Castle County and its agents. Appellant, Joseph M. Walls, contends that the trial court erred by deciding as a matter of law that the appellees, Scott Rees (Rees) and the New Castle County Department of Public Safety (the county) were immune from suit in connection with his claim for the value of an automobile which was seized by the county as authorized by statute and later destroyed, even though the statute required that it be returned to the owner.

On March 28, 1984, Walls was arrested and incarcerated in connection with a criminal investigation. Because it was thought that his vehicle had been used in the commission of a felony and it was involved in the investigation, it was seized by the New Castle County Police pursuant to 11 *Del.C.* § 2322.[1] Upon completion of the criminal investigation on April 24, 1984, appellee Rees, a New Castle County Police Department employee, sent a letter to Walls by certified mail, return receipt requested, advising him that his vehicle could now be released. The letter also advised Walls that unless he made alternative arrangements with the county, the vehicle would be towed to a "commercial storage facility" after 30 days. The letter concluded: "[A]fter the vehicle leaves our facility, a daily storage fee set by the private vendor will be incurred by you." Walls was incarcerated at that time, but his wife, Donna M. Walls, who was joint owner of the automobile, contacted the New Castle County Police and tried to secure release of the vehicle. She was not successful for reasons which are not revealed in the record.

On November 2, 1984, Walls was acquitted of the criminal charges which involved the possible use of the vehicle. Thereafter, he and/or his representative again attempted to regain possession of the vehicle. At that time, he was advised by an unidentified county employee that the vehicle would be returned only upon a showing of

---

**1.** 11 *Del.C.* § 2322 states:
   *Grounds for Seizure.*
   Whenever any vehicle, as defined in this subchapter, has been used in, or in connection with, the commission of any felony or in connection with the flight or escape of any person who has committed any felony or in the transporting of cigarettes in violation of Chapter 53 of Title 30, it shall forthwith be seized and taken into custody by the peace officer or officers having knowledge of the facts of such use.

proof of ownership, proof of insurance, *and* the payment of towing and storage fees. While he was able to prove ownership and the existence of insurance, Walls refused to pay the towing and storage fees.

Nearly two years later, on August 15, 1986, the county transferred possession of the vehicle to B & F Towing and Salvage Company, Inc. (B & F), a commercial storage facility often used by the county for this purpose. Walls was not notified of this transfer. In October, 1987, B & F contacted the Department of Motor Vehicles of the State of Delaware for authorization to dispose of the vehicle pursuant to 21 *Del.C.* Chapter 44, as a vehicle which had been abandoned. Thereafter and without notice to the appellees, the vehicle was sold for $25.00 to Breitenbach Auto Recyclers on October 20, 1987, and crushed for scrap metal.

Meanwhile, on November 24, 1986, Walls had filed a complaint in Superior Court seeking an order compelling the appellees to return the vehicle to him, or, in case the vehicle could not be returned, seeking $2,500.00 plus interest in compensatory damages and $5,000.00 in punitive damages. In the answer to the complaint, the appellees admitted that Walls was the record owner of the vehicle at the time of the seizure and that he had been acquitted of the charges which had precipitated the seizure. Appellees denied, however, that Walls was entitled to the relief requested and raised as an affirmative defense the contention that the appellees were immune from this suit according to the common law doctrine of sovereign immunity and pursuant to the terms of the Delaware Tort Claims Act (the Act). 10 *Del.C.* Ch. 40, Subch. II. Additionally, appellees argued that the seizure had been a proper seizure under the terms of the statute and that Walls had not complied with the procedures set out for release of the vehicle, which included paying the towing and storage fees. Further, appellees argued that they were no longer in possession of the vehicle,

having had it moved to a lot owned by B & F.

On May 28, 1987, defendants moved for summary judgment. On July 6, 1987, the court granted summary judgment in favor of the defendants on the tort claims for damages on the ground that the county was immune from such a suit according to 10 *Del.C.* § 4011(a).[2] On the request for the return of the vehicle, the court delayed its ruling pending presentation of memoranda by both parties on the questions of whether the appellees had authority to require Walls to pay the towing and storage fees and whether the appellees were required to provide additional notice to the owner when the vehicle was moved to B & F. On February 18, 1988, after considering the memoranda, the court denied the defendants' motion for summary judgment on the remaining issues and ordered them to return the vehicle to Walls. As a result of that order, the question of notice was deemed irrelevant.

Shortly thereafter, defendants finally discovered that the vehicle had been destroyed while the case was pending and that they were therefore unable to comply with the court order. On April 18, 1988, and by amended order dated May 23, 1988, the Superior Court ordered the parties to negotiate a settlement of the matter and allowed the appellees to request a hearing on the fair market value of the vehicle. The court stated further that such a request would constitute an admission by appellees that the appellant was entitled to compensation for the vehicle. On the other hand, the court stated that if the appellees took the position that they did not owe the appellant any compensation, they were to submit argument on that issue. Appellees subsequently moved for summary judgment on the grounds that they were immune from a tort claim for damages pursuant to 10 *Del.C.* § 4011. On October 28, 1988, the court granted their motion and thus held them immune from liability. A motion for reargument was later denied.

**2.** 10 *Del.C.* § 4011(a) states in pertinent part: Except as otherwise expressly provided by statute, all governmental entities and their em- ployees shall be immune from suit on any and all tort claims seeking recovery of damages.

The appellant then filed a notice of appeal to this Court.

## I.

First, the Court must determine whether the appellees' actions, quite apart from government immunity, constituted actionable wrongdoing. The parties agreed that the seizure of the vehicle was lawful pursuant to 11 *Del.C.* § 2322. Appellees also argue, however, that their continued possession was lawful. If the county were correct in requiring Walls to pay for the costs incurred as a result of the seizure, appellees might not be liable for what was done during the period of the detention. The claim for payment of expenses before the release of the vehicle, however, was not consistent with the written procedures of the New Castle County Department of Public Safety,[3] or with prior decisions of the Superior Court. *Thompson v. Danvir Corp.*, Del.Super., 264 A.2d 361 (1970). *See also, State v. Lloyd*, Del.Super., 552 A.2d 498 (1988).

There is no indication in the order governing department procedures that a ve-

hicle is to be released only after the owner pays the towing fees. To the contrary, the order indicates that careful records must be kept so that the towing charges may be accounted for within the department. Paragraph 5 of Section III specifically prohibits the officer from giving the "tow card" to the owner or operator of the vehicle. The order also instructs the seizing officers to retain only those vehicles which are ultimately likely to be forfeited, because "any time in storage only adds to the cost absorbed by the Department."

■ The Superior Court has held that "in the absence of a statute specifically creating a lien in favor of the garageman or requiring the owner to pay the costs of seizure, the plaintiff is not liable for costs of towing and storage." *Thompson*, 264 A.2d at 363. Accordingly we find no error in the order of Superior Court dated February 18, 1988, applying the *Thompson* holding to this case and ruling that the appellant was not required to pay towing and storage fees incurred by the county in order to secure release of his vehicle. Because the county no longer had any right to

---

**3.** New Castle County Department of Public Safety, General Order # 25, dated August 1, 1983, states in part:

III. *Towing Vehicles As Part of An Investigation*

Impound—to seize and hold under law, taken into custody by the Department. All vehicles impounded will be inventoried.

In those instances where the vehicle is to be seized as evidence, the following procedures will be followed:

A. Towed as Evidence:

. . . . .

1. Seek supervisory authority for the impoundment and complete all sections of Form # 097 Tow Card with particular emphasis on:
  a. Reason for impoundment
  b. Supervisor's authority
2. Attempt to notify owner and complete Form # 79 in its entirety
3. Notify Center to dispatch sector tow service and advise that the vehicle is impounded
  a. All vehicles impounded will be stored in the fenced in area on the west side of the maintenance garage at the Churchman's Road facility. . . .
  b. . . . Once processing of the vehicle is completed and/or the maintenance supervisor or night shift foreman is available to receive the impounded vehicle at Churchman's Road, the vehicle may be towed from head-

quarters to the impound yard at Churchman's Road.

4. The Vehicle Tow Card will be signed by the tow truck operator. The officer will furnish the pink copy to tow truck operator.
5. *No copy of the Tow Card* is to be given to the driver or operator. [emphasis in original]

. . . . .

8. The completed forms, (Tow Card # 097, and Notification Form # 79) will be given to the House Sergeant for transmittal to PIC.
9. The officer initiating the seizure shall forward a memorandum to the Investigative Section commander noting the date, time, officer's name, reason for towing, nature of the investigation and other necessary information concerning the case. The Investigative Section commander shall approve and coordinate all storage of confiscated and seized vehicles. The Investigative Section commander shall maintain a record of all vehicles stored for this purpose.

. . . . .

VIII. Towing of Vehicles for Seizure

. . . . .

6. Keep in mind there is usually an appreciable period of time between seizure and trial and any time in storage only adds to the cost absorbed by the Department.

the vehicle once Walls was acquitted, the vehicle should have been released to him upon proof of ownership in November, 1984. 11 *Del.C.* § 2311(a)(2).[4] *See also, Campbell v. Cochran,* Del.Super., 416 A.2d 211, 220 (1980) (the court interpreted 11 *Del.C.* § 2311 to indicate that the failure of the State to prove the crime would terminate the State's right to retain the property). Thus, the county is liable for the loss of the vehicle unless it is immune from all such liability because it is a governmental entity.

## II.

We must then consider whether the appellees are relieved of their liability to Walls by the fact that they are a governmental employee and entities. The doctrine of sovereign immunity in Delaware is now largely framed by statute. *Fiat Motors of N.Am., Inc. v. Mayor and Council of the City of Wilmington,* Del.Supr., 498 A.2d 1062 (1985). Whether the appellees were immune from liability depends in this case on whether the appellant's claim is not subject to the immunity provided to governmental entities and their employees in most circumstances by the Tort Claims Act. 10 *Del.C.* Ch. 40, Subch. II.

■ The Superior Court, by order dated July 6, 1987, granted summary judgment to appellees, thereby ruling that the statute conferred immunity from the tort claims for both compensatory and punitive damages. To the extent that Walls's claim is for mere negligence or the improper exercise of discretion by the county or its employees, the Act bars recovery. The specific provision which applies provides for immunity in connection with:

(3) The performance or failure to exercise or perform a discretionary function or duty [of an employee of the State or a subdivision thereof], whether or not the discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation or resolve under which the discretionary function or duty is performed is valid or invalid.

10 *Del.C.* § 4011(b)(3). (This Court's explanatory language is noted in brackets.) This provision relates to both the procedures regarding seizure of the vehicle and to the erroneous decision made by Rees and the county to require payment of the fees before its return. Technically, the appellees were immune from liability for money damages incurred as a result of the decision to retain possession of the vehicle and to move it to B & F, and even for any negligence as a bailor in the ultimate destruction of the vehicle. *Sadler v. New Castle County,* Del.Supr., 565 A.2d 917, 921 (1989).

■ Additionally, appellee Rees was immune as an employee of the county. There is nothing in the record to indicate that by sending the letter to Walls informing him of the fee requirement, Rees was not acting "within the scope of employment" or that his actions displayed "wanton negligence or willful and malicious intent." 10 *Del.C.* § 4011(c).[5] The order of Superior Court of July 6, 1987 granting summary judgment to appellees on the issue of compensatory and punitive tort damages was correct as far as it went.

■ The Tort Claims Act, however, is not deemed to provide immunity for the appellees from Walls's alternative statutory claim for the return of the vehicle itself. His alternative claim was based on

---

**4.** 11 *Del.C.* § 2311(a)(2) states:
(a) The following disposition shall be made of any papers, articles or things validly seized:
.        .        .        .        .
(2) If the papers, articles or things were allegedly used in the commission of a crime, they shall be returned to the person from whom seized if such person is not thereafter duly convicted of the alleged crime; but if such person is duly convicted of the alleged crime, the papers, articles and things shall be disposed of as the court directs.

**5.** 10 *Del.C.* § 4011(c) states:
(c) An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which his or her governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent.

alleged conversion of his property, and he asked for the remedy of replevin. In Delaware, replevin is "primarily a form of action for the recovery of the possession of personal property which has been taken or withheld from the owner unlawfully." *Harlan & Hollingsworth Corp. v. McBride,* Del.Supr., 69 A.2d 9, 11 (1949). Although the plain language of the Act grants immunity from traditional *tort* claims "seeking recovery of damages," (10 *Del.C.* § 4011(a)), we rule that under the circumstances of this case, an action for replevin is not barred by the Act.

The order of the Superior Court of February 18, 1988 granted the appellant summary judgment for the return of his vehicle (without punitive or incidental damages). We hold that ruling to be correct, and we further hold that there is no applicable governmental immunity. We also note that the appellant's cause of action for replevin came into existence in November, 1984, on the date when he was acquitted of the criminal charges which precipitated the seizure of his vehicle. From that point on, appellees no longer had any right to hold Walls's vehicle and were obligated to return it to him. 11 *Del.C.* § 2311(a)(2).

### III.

Shortly after the order dated February 18, 1988 was issued by the Superior Court, appellees discovered that the vehicle had been disposed of by B & F Towing Company in October, 1987, pursuant to permission from the Department of Motor Vehicles of the State of Delaware. Appellees immediately notified the Superior Court that they would be unable to comply with the order. After an office conference with the parties, the court by order dated April 18, 1988 (as amended May 23, 1988) ordered the appellees to settle with appellant on the basis of the market value of the destroyed vehicle. The appellees then renewed their defense of immunity, arguing that now the claim was for money damages resulting from negligence and that the county was immune from liability. This position was adopted by the Superior Court in an order dated October 28, 1988 and reaffirmed in the denial of the motion for reargument on December 1, 1988. We disagree and reverse those decisions.

The Superior Court appears to have shifted the focus from liability of the appellees for unlawful conversion of the vehicle to liability for negligence. The Superior Court stated the question as "do the present facts of record revealing that during October 1987 the defendants placed in motion a process which ultimately resulted in the vehicle being crushed into scrap metal form the basis of a *valid claim for damages* against the defendants?" *Walls v. Rees,* Del.Super., C.A. No. 86C–NO–117, Poppiti, J., 1988 WL 116416 (Oct. 28, 1988) (ORDER) (emphasis added). In answering the question, the Superior Court relied on a replevin case from the Maryland Court of Appeals. *General Motors Acceptance Corp. v. Petrillo,* Md.App., 253 A.2d 736 (1969). In that case, the court held that a debtor who had defaulted on a loan did not have sufficient rights to the title of a truck which had been repossessed to warrant replevin from the repossessor. The court also held, however, that there were separate damages to other property which occurred as a result of negligence on the part of the repossessor, and the appellee was awarded money to compensate for those losses. Thus, the replevin remedy and the other damages claimed were deemed to be separate issues.

In this case, the controversy stems from appellees' failure to return property as they were required to do. The value of the vehicle itself is directly involved because it is the only reasonable measure of the loss sustained on account of the county's destruction of the property. This Court has held that Delaware law will support a claim such as this in replevin. *Harlan,* 69 A.2d at 11. In the *Harlan* case, a purchaser sued for possession of machinery which he had purchased and to which he argued that he had established title under the terms of the sales contract. During the dispute, the seller disposed of the machinery at public auction. The court held that the buyer had established sufficient rights in the title to sustain replevin of the goods from the seller. Because the machinery had been sold,

the court held that "[a] secondary object of the action may, therefore, be for the recovery of a sum of money equivalent to the value of the property claimed if the defendant cannot or will not surrender possession." *Id.* The value of the machinery was established as of the date of the conversion, which in that case was the date of the contract purchase price. *Id.* In accord with the *Harlan* decision, we rule that Walls's claim which established the liability of the appellees to return possession of appellant's vehicle was not converted into a tort claim for damages based on negligence because the appellees were unable to surrender the vehicle. Consequently, the Tort Claims Act does not apply to this case, and the county does not enjoy immunity as to this claim.

## IV.

Appellant also argues that his claim falls within the exception provided in the Tort Claims Act itself as to motor vehicles. He contends that even if his claim were one for tort damages, the duty imposed upon the county by the statute authorizing the seizure of his vehicle operates as an express exception to governmental immunity.

■ Although we have decided that the claim is not one for the tort damages covered by the Act, we will address these additional contentions in the interest of lending additional clarity to the construction of the Tort Claims Act. 10 *Del.C.* Ch. 40, Subch. II. This Court has described the Act as reflecting the legislature's intention to broaden the doctrine of sovereign immunity. *Fiat*, 498 A.2d at 1066. Any statutory exception to immunity from claims for damages arising from negligent acts of a county government must now be found exclusively in the provisions of 10 *Del.C.* § 4012, or among those exceptions which are "otherwise expressly provided by statute" as noted in the language of 10 *Del.C.* § 4011(a). *Id.* at 1063.

Appellant contends that § 4012 should be deemed to provide an applicable exception to immunity on account of this language:

A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:

(1) In its ownership, maintenance or *use of any motor vehicle*, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.

10 *Del.C.* § 4012(1) (emphasis added). We held in the *Fiat* case that this section is to be viewed as an exclusive list of exceptions to immunity. *Fiat*, 498 A.2d at 1066. More recently, we have held that the wording of the § 4012 exceptions are "subject to strict construction" so as not to undermine the broad immunity granted by the Act. *Sadler v. New Castle County*, Del.Supr., 565 A.2d 917, 923 (1989). Appellant argues that seizure of his vehicle by the county constituted "use of any motor vehicle" within the meaning of that exception. The purported "use" was for evidence in his trial. He argues that the county's negligence in this "use" caused the vehicle's ultimate destruction. We cannot adopt this construction. We do not regard the seizure and storage of an automobile as the "ownership, maintenance or use" thereof within the meaning of the Act.

■ Alternatively, appellant has asserted that the statutory mandate of 11 *Del.C.* § 2311 requiring the county to release seized property once the accused is acquitted also operates as an express exception to the governmental immunity provided for in 10 *Del.C.* § 4011. Appellant argues that the mandatory language of this statute creates an express direction and a duty and that liability for such duty cannot be avoided under the terms of the Act. Because this duty is expressly stated in the statute, he contends that it fulfills the requirements of an express exception to the immunity granted in the Act. Appellees have argued that the requirement that there be an "express" exception to governmental immunity means that a statute must explicitly state that a governmental entity will *not* be immune from its provisions.

We find merit in appellant's contention on this point. The duty of the county to return the vehicle is a specific and express

**1168**

statutory duty to do a specific act. Such duty falls into a very different category than the general duty to avoid tortuous conduct. In this case, however, we have held that the mandate of 11 *Del.C.* § 2311 requiring the appellee county to return the vehicle to its owner creates a specific statutory duty of a type not even addressed in the provisions of the Tort Claims Act. Thus, Walls's claim survives a claim of immunity either as a claim not covered by the Act or as subject to a specific statutory exception to the immunity granted by the Act.

## V.

Appellant has also challenged the constitutionality of the Tort Claims Act, to the extent that it is deemed to provide for governmental immunity in this case arguing that it violates the equal protection clause of the United States and Delaware Constitutions, and asserting that if the Act operates to deny his replevin action, it would allow a taking of his property by the government without compensation as prohibited by both constitutions. Although one or both of these contentions may have theoretical merit, we do not address them in this case because Walls's right to recover has been recognized.

\*     \*     \*

We reverse the decision of the Superior Court and remand the case for a hearing to establish the fair market value of the vehicle as of the date of Walls's acquittal and to enter a money judgment in this replevin action based on such fair market value plus interest.