**Paula G. LAW, mother, and E. Howard Johnson, III, father, next friends and guardians, ad litem, of Saskia Johnson, a minor child and Paula G. Law and E. Howard Johnson, III, Plaintiffs,**

**v.**

**DEVELOPMENTAL CHILD CARE INC., a corporation of the State of Delaware, and Wilhelmina Bateman, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: Dec. 16, 1986.
Decided: Jan. 29, 1987.

Rory C. Godowski, of Green, Green & Godowski, Wilmington, for Paula G. Law and E. Howard Johnson, III.

Ellen S. Meyer, Wilmington, for Suzanna, Priscilla and Amanda Wright.

Wayne N. Elliott, Prickett, Jones, Elliott, Kristol and Schnee, Wilmington, for Developmental Child Care, Inc.

George E. Evans, Wilmington, for Wilhelmina Bateman.

Janice R. Tigani, Deputy Atty. Gen. of the Atty. Gen. Office for Division of Child Protective Services.

Susan Kirk-Ryan, Deputy Atty. Gen. of the Attorney Gen. Office for the Mental Hygiene Clinic.

POPPITI, Judge.

On October 15, 1986, the Division of Child Protective Services [hereinafter "Division"] filed a motion to quash the subpoena issued by defendants Developmental Child Care, Inc. and Wilhelmina Bateman to the Division for the medical records of Suzanna Wright and her daughters Priscilla and Amanda. On the same day, the Wrights filed a motion for a protective order to prevent the disclosure of this same information. The Wrights are not parties to the captioned action. The information sought is allegedly of a highly personal nature, and affidavits have been filed by the treating professionals to the effect that disclosure of these records could cause severe psychological and emotional damage to the Wrights. This is the Court's decision on these motions.

The Division is a State agency authorized by the provisions of 16 *Del.C.* ch. 9 to receive and investigate allegations of child abuse or neglect. It is the recipient of federal funds under the Child Abuse Prevention and Treatment Act, 42 U.S.C. § 5101, *et seq.*

Under the provisions of this federal statute, in order for the Division to qualify for such assistance, the State must "provide for methods to preserve the confidentiality of all records in order to protect the rights of the child, and the child's parents or guardians." 42 U.S.C. § 5103(b)(2)(E). Likewise, federal regulations require the State to "provide by statute that all records concerning reports and reports of child abuse and neglect are confidential and that their unauthorized disclosure is a criminal offense." 45 C.F.R. § 1340.14(i)(1). The regulations, however, do permit the State to authorize such disclosures to certain persons or agencies under limitations and procedures determined by the State, including disclosure to a court. 45 C.F.R. 1340.-14(i)(2)(ii).

Delaware provides by statute that the Division shall establish a registry of infor-

mation concerning each case of abuse or neglect required to be reported. The statute further provides that the "files shall be confidential subject to the rules and regulations adopted by the Division." 16 *Del.C.* § 905(b). The Division, in its Manual, provides that the "use and disclosure of all information and records is limited to purposes directly connected with the delivery of Child Welfare Services." Division Program Manual § 202.2. The Manual also acknowledges that "actions are often initiated in Family Court that necessitate the revealing of confidential information in order to protect the best interests of a child and/or his family." Division Program Manual § 202.4.

The underlying action here is a tort suit for money damages for alleged child abuse. As noted above, the Wrights are not parties to this suit. While I certainly start from the premise that the phrase "directly connected with the delivery of Child Welfare Services" should be read as broadly as possible consistent with the enabling legislation of the Department of Services for Children, Youth and their Families, 29 *Del.C.* § 9001, *et seq.* I am satisfied that the phrase does not contemplate a private citizen's right to seek money damages for alleged child abuse. In my view there is simply no connection direct or otherwise to the provision of services to children as contemplated by the statutory scheme. 29 *Del.C.* § 9003.

Delaware also provides for the non-disclosure of such confidential information as the Wright reports elsewhere in the Delaware Code. Under the rules of evidence, a patient "has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition ... among himself, his ... psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the ... psychotherapist." *D.R.E.* 503(b). While no such privilege exists under this rule as to a communication relevant to "the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condi-

tion as an element of his claim or defense," *D.R.E.* 503(d)(3), this exception clearly does not apply here. The Wrights are not party to the underlying proceeding and thus, *ipso facto*, they are not relying on their "physical, mental or emotional condition" as an element of any claim or defense. That the plaintiff in the underlying action may be so relying is irrelevant. The exception speaks only to the patient's reliance.

Finally, under Delaware law no licensed clinical social worker may disclose any information acquired from persons consulting him in a professional capacity, except with the person's consent, or when the communication reveals the prior commission or contemplation of a violent crime or harmful act, or when the person brings charges against the social worker, or when the person is a minor and the information received indicates that the minor was a victim or subject of a crime. 24 *Del.C.* § 3913. Under this last exception, the social worker "may disclose" the information when the social worker is "required to testify fully in any examination, trial or other proceeding in which the commission of such a crime is the subject of inquiry." 24 *Del.C.* § 3913(3). To the extent that this exception may be applicable here, I am satisfied that the precatory phrasing leaves the final decision as to disclosure to the discretion of the licensed social worker.

■ Thus, the records of the Division would be protected by 16 *Del.C.* § 905 and the regulations promulgated thereunder, the records of a psychotherapist would be protected under *D.R.E.* 503, and the records of a licensed clinical social worker would be protected under 24 *Del.C.* § 3913. There are four treating professionals whose records of the Wrights are sought here. The parties agree that Dr. Leithton Jones, a child psychiatrist employed by Delaware Guidance Services who treated the Wright daughters, qualifies as a "psychotherapist" under *D.R.E.* 503(a)(3)(A). Deloras Garrison is a licensed clinical social worker employed by Delaware Guidance Services. Nancy Mazaris is a psychiatric social worker employed by the West End Mental Health Clinic. Michael Peyser is a

supervisor of the Intrafamily Sexual Abuse Unit of the Division. I am satisfied that all four of these treating professionals are covered by one or more of the provisions listed above, and therefore their records would be protected from disclosure.

The final issue for me to address here is the effect of 16 *Del.C.* § 908 on these privileges. This section reads in pertinent part as follows:

> The physician-patient privilege ... or any privilege except the attorney-client privilege, provided for by professions such as social work or nursing, covered by law or a code of ethics regarding practitioner-client confidences, both as they relate to the competency of the witness and to the exclusion of evidence, shall not pertain in any civil or criminal litigation in which a person's neglect, abuse, dependency, exploitation or abandonment is in issue nor in any judicial proceeding resulting from a report submitted pursuant to this chapter.

16 *Del.C.* § 908.

If this section were to be read broadly, it could be argued that, because the underlying tort action is based on the alleged abuse of the plaintiffs by the defendants, this constitutes a civil litigation "in which a person's neglect, abuse, dependency, exploitation or abandonment is in issue," thus neutralizing privileges as to practitioner-client confidences, except the attorney-client privilege, for all witnesses or potential witnesses in the litigation. Indeed, because this section literally refers only to litigation involving "abuse" of a "person", it could arguably apply to any tort litigation involving any form of abuse of any person, be they adult or child. I am satisfied that such a reading of the statute would lead to an absurd and undesirable result.

■ It is a fundamental rule of statutory construction that if the literal meaning of a statute is inconsistent with the legislative meaning or intent, leading to absurd results, the words of the statute should be modified to agree with the intent. "The intention prevails over the letter, and the letter must if possible be read to conform to the spirit of the act.... The particular inquiry is not what is the abstract force of the words or what they may comprehend, but in what sense were they intended to be understood or what understanding they convey when used in the particular act." 2A N. Singer, Sutherland Statutory Construction (Sands 4th ed. 1984). While it is, of course, impermissible to imbue a statute with a meaning in excess of or contrary to the legislative purpose, it is fully within the Court's power to cure a statute in order to implement that purpose and avoid undesirable consequences. *Price v. All American Engineering Co.*, Del.Supr., 320 A.2d 336, 342 (1974).

The provisions of 16 *Del.C.* § 908, therefore, should be read in conjunction with the whole of 16 *Del.C.* ch. 9, which deals with the abuse of children. The purpose of this chapter, and hence of § 908, is set forth in 16 *Del.C.* § 901:

> It is the purpose of this chapter to provide for comprehensive protective services for abused and neglected children found in the State by requiring that reports of such abused and neglected children be made to the appropriate authorities in an effort to prevent further abuse or neglect and to assist those children and their parents or those persons legally responsible for them, in their own home, to aid in overcoming the problems leading to abuse and neglect, thereby strengthening parental care and supervision and enhancing such children's welfare and preserving the family life whenever feasible.

The underlying action here, as mentioned previously, is a tort suit seeking money damages for alleged past injuries. As such, it does not seek "to prevent further abuse or neglect," but rather seeks recompense for alleged injuries already done. Nor can it be said that this suit seeks to aid "children and their parents ... in their own home, ... in overcoming the problems leading to abuse and neglect." This is particularly important in light of the fact that the records sought pertain to the treatment of the Wrights who are not even parties to this suit. The treating professionals' affi-

davits state that disclosure of these records could have serious psychological and emotional repercussions on the Wrights. Thus, permitting the use of 16 *Del.C.* § 908 to negate the various privileges against disclosure would in fact directly contradict the legislature's intention of "enhancing such children's welfare and preserving the family life whenever feasible" insofar as the Wrights are concerned. This is not a case, such as a termination of parental rights proceeding or a hearing to determine parents' visitation rights, where the focus of the proceedings is to protect and help abused and neglected children. This being

the case, I am satisfied that 16 *Del.C.* § 908 does not apply here.

The records of the Wrights' treatment are, therefore, privileged from discovery. The Wrights' Motion for a Protective Order and the Division's Motion to Quash Subpoena are HEREBY GRANTED.

IT IS SO ORDERED.