**Josephine MOORE, Plaintiff Below, Appellant,**

v.

**WILMINGTON HOUSING AUTHORITY, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: Oct. 20, 1992.
Decided: Feb. 8, 1993.

David R. Scerba (argued), Ramunno & Ramunno, P.A., Wilmington, for appellant.

Roger A. Akin (argued), Sawyer & Akin, P.A., Wilmington, for appellee.

Before VEASEY, C.J., and HORSEY, MOORE, WALSH, and HOLLAND, JJ., constituting the Court *en Banc.*

VEASEY, Chief Justice:

This case presents for review the issue of whether a leased dwelling unit owned by a public housing authority is a "public building," and therefore within the statutory category of facilities as to which the doctrine of sovereign immunity is waived and not a bar to suit against the public housing authority for personal injuries arising out of the alleged negligence of the authority. We hold that, under the circumstances presented here, such a dwelling unit is a public building. Therefore, the doctrine of sover-

eign immunity does not insulate the authority from suit. The Superior Court held to the contrary. Accordingly, we reverse and remand.

■ On March 15, 1987, plaintiff/appellant Josephine Moore ("Moore") was allegedly injured when a ceiling collapsed in a rental unit she was visiting. The unit was owned by defendant/appellee Wilmington Housing Authority ("WHA") and leased to Moore's stepmother. Moore sued WHA alleging negligence. WHA moved to dismiss the complaint on the ground of governmental immunity pursuant to the Delaware Tort Claims Act ("the Act"). 10 *Del.C.* § 4010 et seq. The Superior Court held that WHA was immune from suit and granted defendant's motion to dismiss. The trial judge applied a "freedom of access" test and explained that, while governmental entities such as the WHA[1] are liable for the negligent construction or maintenance of "public buildings," private rental units leased by the WHA cannot be classified as such under 10 *Del.C.* § 4012(2). *Moore v. Wilmington Housing Authority,* Del.Super., C.A. No. 87C–OC–19, 1992 WL 19939 (Feb. 4, 1992). Moore appeals from the Superior Court's order of dismissal. The standard and scope of review is whether the trial court erred as a matter of law in its construction of the term "public building" as it is used in the statute. This Court reviews questions of law *de novo. Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del.Supr., 445 A.2d 927, 930 (1982).

Section 4012(2) provides:

§ 4012. Exceptions to immunity.

A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:

. . . .

---

1. 10 *Del.C.* § 4010(2) provides:

(2) "Governmental entity" means any municipality, town, county, administrative entity or instrumentality created pursuant to Chapter 8 of Title 22 or Title 9, any municipality created by a special act of the General Assem-

bly, any housing authority created pursuant to Chapter 43 of Title 31, any parking authority created pursuant to Chapter 5 of Title 22 and all registered volunteer fire companies and volunteer rescue squads.

(2) In the construction, operation or maintenance of any public building or the appurtenances thereto, except as to historic sites or buildings, structures, facilities or equipment designed for use primarily by the public in connection with public outdoor recreation.

*Id.* Since the construction of the term depends almost entirely on the context in which it is used, it is first necessary to ascertain the intent of the General Assembly in enacting the legislation.

An examination of the House Bill which became 10 *Del.C.* Ch. 40 on July 5, 1979, evidences an intent on the part of the General Assembly to remove prior waivers of sovereign immunity and to define the areas where governmental liability would exist. *Porter v. Delmarva Power & Light Company,* Del.Super., 488 A.2d 899, 904 (1984). The Act was passed in the wake of two Delaware Supreme Court decisions that essentially eliminated the constitutional defense of sovereign immunity with respect to counties and municipalities. *See City of Wilmington v. Spencer,* Del.Supr., 391 A.2d 199 (1978); *Varity Builders, Inc. v. Polikoff,* Del.Supr., 305 A.2d 618 (1973). The objective of the Act was to overcome the effect of those cases. The preamble of the Act expressly provides:

> WHEREAS, the Courts of the State of Delaware have recently reversed precedent and have pronounced that the counties and certain municipalities of the State of Delaware no longer are protected by the Constitutional defense of sovereign immunity; and

> WHEREAS, the provision of vital local governmental services is thereby placed in substantial jeopardy by the Courts' decisions; and

> WHEREAS, the cost of insurance, when obtainable, has reached proportions unanticipated by local government as a result of the multiplicity of lawsuits filed against local governments in recent years.

62 Del.Laws Ch. 124. The remainder of the Act restructured the existing Act by denominating its then current provisions, sections 4001 through 4005, inclusive, as Subchapter I, "State Tort Claims," and setting forth a new Subchapter II, entitled "County and Municipal Tort Claims" ("Subchapter II"). *Id.* Newly enacted section 4011(a) specifically states: "Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages." 10 *Del.C.* § 4011(a); 62 Del.Laws Ch. 124. Given the language of the legislation, it is clear that the General Assembly intended to reestablish sovereign immunity with respect to counties and municipalities, subject to certain exceptions set forth therein. *Porter,* 488 A.2d at 904.

This Court has considered the General Assembly's intent in enacting the Act on several occasions. In the case of *Walls v. Rees,* Del.Supr., 569 A.2d 1161, 1167 (1990), we described the Act "as reflecting the legislature's intention to broaden the doctrine of sovereign immunity." Five years previously, in the case of *Fiat Motors v. Mayor and Council,* Del.Supr., 498 A.2d 1062 (1985), we held that various provisions of the Act support a ruling that "§ 4011(a) was intended—to provide a new and broader scope of municipal immunity." *Id.* at 1066. Additionally, in the case of *Sadler v. New Castle County,* Del.Supr., 565 A.2d 917, 923 (1989), we strictly construed the section 4012 exceptions to sovereign immunity so as not to undermine the broad immunity granted by the Act. Nevertheless, this Court has also recognized that the General Assembly intended to accomplish more than merely broadening immunity through its enactment of Subchapter II.

The scope of the doctrine of sovereign immunity had been criticized by the courts of this State for a number of years. *See Fiat Motors,* 498 A.2d at 1066. As a result, this Court repeatedly called upon the General Assembly to supply relief from the injustices which sovereign immunity sometimes inflicts upon wronged private citizens. *Id.* at 1066–67. The virtual elimination of sovereign immunity with respect to counties and municipalities in the cases of *City of Wilmington v. Spencer* and *Varity Builders, Inc. v. Polikoff* ultimately caused

the General Assembly to respond with the passage of the revised Act.

The objective of Subchapter II was two-fold. First, because municipal and county immunity had been essentially eliminated, the General Assembly extended immunity to those governmental entities. Second, the General Assembly was answering this Court's call to provide wronged private citizens with relief from the injustices that are inherent in the doctrine of sovereign immunity. *Id.* In essence, the General Assembly intended to strike a balance between the rights of individuals and the interests of society in general, as represented by municipal entities. *Id.* at 1067.

There are no published opinions by the courts of this State defining or analyzing the meaning of the term "public building" as it is used in 10 *Del.C.* § 4012(2).[2] In an unpublished opinion in 1990, the Superior Court addressed this issue in the case of *Cox v. Wilmington Housing Authority*, Del.Super., C.A. No. 89C–MR–201, 1990 WL 177578 (Nov. 8, 1990).[3] Plaintiff sued the WHA and others after being struck on the head by a 40–pound section of cast iron pipe that was thrown from the third story of an unoccupied WHA residential structure.[4] WHA moved for summary judgment on the ground that it was immune from suit under the County and Municipal Tort Claims Act. Plaintiff and WHA's co-defendants opposed the motion, arguing that WHA was exposed to liability pursuant to 10 *Del.C.* § 4012(2). The specific issue before the court was whether the "structure is a 'public building' for purposes of § 4012(2)." *Id.* at 4.

Citing *Webster's Ninth New Collegiate Dictionary*, the Superior Court noted that something is public when it relates to or affects "all the people or the whole area of a nation or a state—or relat[es] to business or community interests as opposed to private affairs...." *Cox*, slip op. at 5. The Superior Court also cited *Black's Law Dictionary* 1105 (5th ed. 1979), which defines a public building as:

> One of which the possession and use, as well as the property in it, are in the public. Any building held, used, or controlled exclusively for public purposes by any department or branch of government, state, county, or municipal, without reference to the ownership of the building or of the realty upon which it is situated. A building belonging to or used by the public for the transaction of public or quasi public business.

2. The General Assembly and the courts of this State have defined the term "public building" in contexts other than the Act. For example, 29 *Del.C.* Ch. 69, which established a unified system for public bidding on public works contracts, defines a public building as:

> any edifice, structure or building which is, or is to be, constructed, reconstructed, altered or repaired pursuant to a "public works contract." The word "building" is a noun and the word "public" is an adjective, and the phrase is thus nounal. It does not mean the act or process itself of constructing, reconstructing, altering or repairing.

29 *Del.C.* § 6901(6). *See C & T Associates, Inc. v. Government of New Castle County*, Del.Ch., 408 A.2d 27, 30 (1979) ("'Public building,' as used in 29 *Del.C.* § 6911, is limited—to a building which is usually held open to the public"); *Edmonston v. Watson*, Del.Ch., C.A. No. 9716, 1988 WL 32372, Hartnett, V.C. (Mar. 31, 1988) (a perimeter security fence constitutes a public building for purposes of public bidding requirements).

"The construction of the term 'public building' depends almost entirely on the context in which it is used, and as this varies in practically every case, no general rule as to the meaning of the term can be formulated." Annotation, *What is "Public Buildings,"* 19 A.L.R. 543 (1919). Thus, statutes which define the term in contexts other than a tort claims act are of limited value in this case.

3. There was a prior decision of the Superior Court in which the term was at issue, but that decision is of little relevance here since it involved a determination that a playing field was not a public building. *Yost v. Delaware Saengerbund & Library Association*, Del.Super., C.A. No. 85C–SE–84, 1987 WL 14894 (June 24, 1987). *See also, Wyndmoor Learning Center v. City of Wilmington*, Bankr., 1992 WL 119367, 1992 Bankr. LEXIS 763 (E.D.Pa.1992) (holding that a private business that provided day care services was not a "public building" under the Act).

4. The structure in question was classified by the WHA as a "scattered site unit." Such a unit is leased to an individual family for use as a private residence. WHA retains only a right of entry for purposes of inspecting the unit and making repairs. *Cox*, slip op. at 4.

Basing its ruling upon both definitions, the Superior Court defined "public building" as meaning "one intended for and/or used by the public for a purpose benefitting the general public." *Id.* The opinion further explained that a public building "is to be contrasted with a structure that is intended to benefit private interests or the interests of individuals who are a part of the general populace, but which does not otherwise have a direct impact on the overall community." *Id.* Since the residence in question was not open to the general public, the Superior Court held that the structure was not a "public building" for purposes of § 4012(2). *Id.* at 6.

The court's reasoning in *Cox* appears to be flawed in two respects. First, although the Superior Court noted that the term "public building" should be strictly construed to preserve the broad grant of immunity, it failed to consider the fact that the General Assembly also enacted the legislation to broaden the rights of wronged private citizens by striking a balance between individual and societal rights. Second, the court concluded that a low-income housing unit is not a public building because it does not have a direct impact on the overall community. One cannot reasonably accept the notion that low-income housing projects do not benefit the overall community.

A review of the case law in other states has revealed several published opinions that have both defined and discussed the meaning of the term "public building" as it is used in the context of tort claims acts similar to the one enacted by the Delaware General Assembly. The relevant decisions stem primarily from cases that were litigated in the courts of Maine and Michigan.[5]

The Maine Tort Claims Act (the "Maine Act") "establishes a presumption of governmental immunity from liability in tort actions." *Stretton v. City of Lewiston,* Me.Supr., 588 A.2d 739, 740 (1991). It states that "[e]xcept as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S.A. § 8103(1). Pursuant to the Maine Act, governmental entities may be held liable only when immunity is expressly removed by statute. *Stretton,* 588 A.2d at 740. Among the exceptions to immunity, the Maine Act contains a "public building" provision that is almost identical to Delaware's. 14 M.R.S.A. § 8104 provides, in relevant part:

> A governmental entity shall be liable for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:
>
> . . . .
>
> 2. In the construction, operation or maintenance of any public building or the appurtenances thereto. . . .

The term "public building" was first construed by the courts of Maine in the case of *Lovejoy v. State,* Me.Supr., 544 A.2d 750 (1988). Plaintiffs in that case sued the State for injuries they sustained while operating their four-wheel drive vehicle on a state-owned military training ground. As plaintiffs drove toward the crest of a grassy mound, their vehicle fell through the underground roof of an assault shelter. The state moved for summary judgment arguing that it was immune from suit un-

---

5. Surrounding states have not had to address this issue given the wording of their tort claims statutes. For example, there is no specific "public buildings" exception in Pennsylvania's Tort Claims Act. Rather, there is a "Commonwealth real estate, highways and sidewalks" exception. 42 Pa.C.S.A. § 8522(b)(4) provides:

 (b) **Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

 (4) **Commonwealth real estate, highways and sidewalks.**—A dangerous condition of

Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

*Id.* Thus, Pennsylvania's exception appears to be based upon a "control" test theory and includes publicly-owned low-income housing facilities therein. Maryland and New Jersey have comparable legislation.

der the Maine Act. The trial court granted the motion and plaintiffs appealed. The sole question on appeal was whether "the phrase 'public building' includes any publicly-owned building, whether open for general public use or not." *Id.* at 751. Explaining that the assault shelter was used exclusively for military training, the court refused to "stretch the 'public building' exception under the Maine Tort Claims Act to include [a] prefabricated, air transportable underground assault shelter...." *Id.* at 751.[6]

The term was next interpreted by the Supreme Judicial Court of Maine in the case of *Stretton v. City of Lewiston.* Me. Supr., 588 A.2d 739 (1991). Plaintiff sued the city on behalf of his minor son who was injured while playing soccer on a wet and muddy high school athletic field. Relying on the case of *Lovejoy v. State,* the court held that an unimproved public athletic field is not a public building for purposes of the Maine Act. Thus, *Stretton* likewise appears to be inapposite.[7]

The Michigan Tort Claims Act (the "Michigan Act") also contains a "public building" exception substantially similar to the Delaware statute. M.C.L. § 691.1406 provides, in pertinent part:

Governmental agencies have the obligation to repair and maintain **public buildings under their control when open for use by members of the public.** Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to

take action reasonably necessary to protect the public against the condition.

*Id.* (emphasis supplied). In providing this exception to the general grant of immunity, the legislature intended to protect the general public from injury by imposing a duty to maintain safe public places upon governmental agencies. *Dagen v. Village of Baldwin,* 159 Mich.App. 620, 406 N.W.2d 889, 891 (1987); *Bush v. Oscoda Area Schools,* 405 Mich. 716, 275 N.W.2d 268 (1979). Like Delaware's General Assembly, Michigan's legislature also appears to have provided wronged private citizens with relief from the injustices that are inherent in the doctrine of sovereign immunity by striking a balance between the rights of individuals and the interests of society in general. *See Fiat Motors,* 498 A.2d at 1067.

Several Michigan courts have construed the meaning of the term "public building" as it is used in the Michigan Act. The Michigan Supreme Court first construed the meaning of the term "public building" in the case of *Green v. State Corrections Department,* 386 Mich. 459, 192 N.W.2d 491 (1971). Plaintiff, a prisoner at the Detroit House of Corrections, was assigned to work on a planing machine in the prison shop. While using the machine, plaintiff amputated half of his right middle finger. Plaintiff sued the state claiming that the machine did not have a proper safety shield or switch. Plaintiff prevailed in both the trial court and on appeal to the Michigan Court of Appeals. The attorney general ultimately appealed the case to the Michigan Supreme Court contending that the State Corrections Department was immune from suit pursuant to the Michigan Act.

---

**6.** Although the *Lovejoy* case appears inapposite to the instant case in light of the court's reliance on the fact that the shelter was underground, camouflaged and used exclusively for military training, it appears that the court used a "freedom-of-access" test to define the term "public building" for purposes of the Maine Act. The court, however, carefully noted that such a conclusion should not be drawn: "[W]e need not and do not decide whether the legislature intended for 'public building' to refer to any publicly-owned building or only those publicly-

owned buildings opened to general public use." *Id.* The court's inconsistent cautionary note suggests that defining "public building" in terms of accessibility to the general public is an approach that cannot easily be rationalized.

**7.** *See Yost v. Delaware Saengerbund & Library Ass'n,* Del.Super., C.A. No. 85C–SE–84, 1987 WL 14894 (June 24, 1987), *supra* n. 3. One wonders whether the facilities in *Lovejoy, Stretton,* and *Yost* could rationally be classified as "buildings," whether "public" or not. See definition of "building" at p. 1174 *infra.*

In deciding this issue, the court stated that although governmental entities such as the Corrections Department are statutorily immune from negligence liability, they ruled that the case falls within the "public building" exception to the Act. Quoting the Michigan Court of Appeals, the Supreme Court held:

> A "public building" has been defined as: **A building owned by a public body,** particularly if it is used for public offices or for other public purposes. Ballentine's Law Dictionary, 3d ed. Thus, a public building is one which exists as a **benefit to the whole community** and is operated and maintained by the governing body of that same community.

*Id.* 192 N.W.2d at 493 (emphasis supplied) (*quoting Green v. State Corrections Department,* 30 Mich.App. 648, 186 N.W.2d 792, 795 (1971)). The court affirmed, ruling that the State was liable under its obligation to repair and maintain public buildings. Thus, it appears that the Michigan Supreme Court adopted a "benefit to the whole community" approach as at least part of its test for defining "public building." In considering whether such a test is appropriate for adoption here, we must examine the scope of and limitations on such a test and attempt to articulate a rationale which may be readily applied in this and future cases. First, we will look to subsequent Michigan cases for guidance. Unfortunately, the State of Michigan law is somewhat murky.

Despite the Michigan Supreme Court's holding in *Green,* the Michigan Court of Appeals, an intermediate appellate court, appears to have applied a different standard for defining "public building" in several cases that arose in the 1980s. For example, in the case of *Dagen v. Village of Baldwin,* 159 Mich.App. 620, 406 N.W.2d 889 (1987), plaintiff sued the village for injuries he sustained when he fell from the roof of a village maintenance building he was repairing. Apparently contrary to the precedent established in *Green,* the Court of Appeals held that "[t]he building was not a place used by the general public and, hence, was not a public building within the meaning of the statute." *Id.* 406 N.W.2d

at 891. Despite its holding, the court neither rationalized its adoption and application of a "freedom-of-access" test nor distinguished the Michigan Supreme Court's holding in *Green.*

The same issue resurfaced in the Court of Appeals two years later in the case of *Griffin v. City of Detroit,* 178 Mich.App. 302, 443 N.W.2d 406 (1989). Plaintiff brought a wrongful death action against the city on behalf of a decedent who died when she slipped and fell in the bathroom of a low-income housing facility owned and operated by the city. The Court of Appeals held that the low-income housing unit was not a public building, explaining that, because the low-income housing unit was not used for public offices or for a public purpose, it was not a "public building" under the definition in *Green. Id.* 443 N.W.2d at 407. Moreover, the court further held that "[i]n applying the public buildings exception, the focus is on the accessibility of members of the general public to the situs of the accident **rather than on the extent to which the building may benefit the community."** *Id.* (emphasis supplied). Thus, the court concluded that even if the dwelling unit was part of a public building, the fact that it was used as a private residence and was not open to the general public precludes it from being a "public building" for purposes of the exception to governmental immunity. *Id.* at 408.

This ruling appears to be in conflict with the Michigan Supreme Court's holding in *Green* in its assertion that the *Green* definition precludes low-income housing from being classified as a public building. *See* 192 N.W.2d at 493. In basing its opinion on the premise that the low-income housing unit was not being used for a public purpose, *Griffin,* 443 N.W.2d at 407, the court seems to disregard the fact that low-income housing is a governmental attempt to remedy the societal problems posed by the need for affordable housing. Since the building was both owned by a public body and used to benefit the community as a whole, it is difficult to rationalize a holding that it was not a "public building" under the *Green* definition.

The term was similarly construed by the Michigan Court of Appeals two years later in another case involving a low-income housing unit. *White v. City of Detroit,* 189 Mich.App. 526, 473 N.W.2d 702 (1991). Plaintiff, a tenant in a low-income public housing facility, sued the city for injuries he sustained when he stepped into a hole in a brick patio located within the projects. The court again held that the *Green* decision should be limited to the specific facts upon which it was based and disposed of the case in accordance with its prior holding in *Griffin. Id.* 473 N.W.2d at 703. The court held that since the building was a residential facility and was not used for public offices or a public purpose, the public building exception does not apply. *Id.* at 704. The court further noted that the patio "does not fall within the exception merely because the area may be accessible by the public." *Id.*

Given the divergence of authority and the confusion that pervades this area of Michigan law, it appears that the issue would have been ripe for consideration by the Michigan Supreme Court. The court was recently presented with an opportunity definitively to define the term in the case of *Gear v. University of Michigan Board of Regents,* Mich.Supr., 480 N.W.2d 104 (1992), a case in which a football player injured in practice by a defect in the design of a state university's football stadium was unable to sue the state because the stadium was not open to the public during practice. The Michigan Supreme Court denied plaintiff's application for leave to appeal, stating only that the issues presented should not be reviewed by the court. *Id.* Justice Levin, however, wrote a short but strongly worded dissent indicating that he would have granted leave to appeal. After briefly discussing *Green* and *Bush,*[8] Justice Levin stated that:

> a public building is one open to those of the general public who use it for its intended purpose. A prison is a public building although open only to prisoners and authorized staff. A school is a public building open only to students and staff—a particular classroom in a school is open only to particular students and staff at particular times.

*Id.* at 105. Justice Levin further stated that the Michigan Supreme Court "has not said, and indeed our decisions are to the contrary, that a building, to be a public building, must be open to all the people all the time for all purposes." *Id.* Thus, the dissent clearly rejects the adoption of a "freedom-of-access" test and appears logically to advocate a "benefit of the community" test or a "control test." In addition to being consistent with *Green,* Justice Levin's dissent also appears to lack the internal inconsistency characterizing the Court of Appeals decisions discussed herein. Given the decision of the majority not to accept the appeal in *Gear* in light of Justice Levin's dissent, it is difficult to ascertain the current state of Michigan law.

■ A court has a duty to read statutory language so as to avoid constitutional questionability and patent absurdity and to give language its reasonable and suitable meaning. *Sturgill v. M & M, Inc.,* Del.Supr., 329 A.2d 360 (1974). If uncertainty exists, the rules of statutory construction must be applied so as not to yield mischievous or absurd results. *Spielberg v. State,* Del. Supr., 558 A.2d 291 (1989). Furthermore, it is well-settled that undefined code terms must be construed according to their common and approved usage. *Coastal Barge Corp. v. Coastal Zone Industrial Control Board,* Del.Supr., 492 A.2d 1242, 1245 (1985); 1 *Del.C.* § 303.

■ In the present case, the Superior Court defined the term "public building" as including only those buildings which are open to public access. This ruling would lead to anomalous results. *See Law v. Developmental Child Care Inc.,* Del.Super., 523 A.2d 557 (1987). In enacting the Act, the Delaware General Assembly intended to strike a balance between the

---

8. In the case of *Bush v. Oscoda Area Schools,* 275 N.W.2d 268 (1979), the Michigan Supreme Court implicitly found that a chemistry laboratory in a public high school that was opened only to enrolled students and staff, was a "public building" for purposes of the Michigan Act.

rights of wronged private citizens and the interests of society in general, as represented by municipal entities. The "freedom-of-access" test is not consistent with this goal. Furthermore, the Superior Court's decision in *Cox v. Wilmington Housing Authority* is unpersuasive given its internal inconsistency.

 We believe that it is important to parse the term "public building" and to analyze separately and precisely the noun "building" and the adjective "public." The proper construction of the noun "building" is driven primarily, if not exclusively, by the ordinary dictionary meaning of the term:

> **Building** (n). **1:** a thing built: **a:** a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy **b:** a portion of a house occupied as a separate dwelling: APARTMENT, TENEMENT—used only in some legal statutes.

*Webster's Third New International Dictionary* 292 (1986). It does not matter whether a building is a free-standing structure or a dwelling unit (such as an apartment) within a larger edifice, as long as it is a structure which falls within the normal dictionary definition of the term "building." In the instant case, we hold that the dwelling unit in the WHA facility does qualify as a "building" for purposes of the statute.

 We move, therefore, to the more difficult issue—*viz.* what is the meaning of the adjective "public" for purposes of 10 *Del.C.* § 4012(2)? It is appropriate here as well, to begin with the ordinary dictionary definition:

> **Public** (adj.). **1a:** of, relating to, or affecting the people as an organized community ... **3a:** of or relating to business or community interests as opposed to

private affairs ... **b:** of, relating to, or in the service of the community or nation ... **c:** devoted to the general or national welfare ... **4a:** accessible to or shared by all members of the community ... **d:** of, by, for, or directed to the people ... **e:** providing services to the people on a business basis under some degree of civic or state control....

*Webster's Third New International Dictionary* 1836 (1986). Although we *begin* with the dictionary definition, our analysis does not end there for purposes of construing 10 *Del.C.* § 4012(2). We agree that essential ingredients of the term for this purpose include the public policy character of the building. That public policy character of the building in this case stems from the fact that it is operated and maintained in furtherance of a governmental objective: *viz.* low-cost housing. The government need not own a building of this nature, since the government could lease a building from a private owner. Yet the government could exercise control over the building as part of its function of operating and maintaining it for a public purpose.

The public purpose ingredient of the definition leads to the conclusion that a building is necessarily one operated and maintained for a public purpose if its function is to benefit the public or the community. *Green v. State Corrections Department,* 386 Mich. 459, 192 N.W.2d 491, 493 (1971). The legislative creation, funding, and grant of responsibility to a housing authority are for public purposes. Providing low-cost housing to needy citizens constitutes a legitimate public policy objective for a legislative body. Thus, the creation, funding, and grant of authority to the WHA in this case constitute a public purpose for the benefit of the community at large. That fact, coupled with other indicia of a public mission (e.g., operation and maintenance), combine to compel the conclusion that such a building is a "public building."

 It does not follow, however, that there must be freedom of access by the general public to a building (and for this purpose an apartment unit within a larger building qualifies as a building) in order for

it to constitute a public building. In our view, a building which otherwise qualifies as a public building and is open to those members of the public who use it for its intended purpose is a "public building" for purposes of 10 *Del.C.* § 4012(2). This is true even if access is limited only to those members of the public (e.g., tenants and their guests) who use it for its intended purpose. Here the dwelling unit was one to which there was only limited access (just as there would be to portions of court buildings, schools, prisons, or certain government offices), but it is a structure enclosed by walls and covered by a roof, it is operated and maintained by a governmental entity for a public purpose, and it is open to those members of the public (and their guests) who use it for its intended purpose. Accordingly, we hold that the residential housing unit in this case qualifies under our definition of "public building" under 10 *Del.C.* § 4012(2). Therefore, the doctrine of sovereign immunity is inapplicable.

The order of February 4, 1992, dismissing this action is REVERSED and the case is REMANDED.