**DIVISION OF FAMILY SERVICES,**
Petitioner,

v.

**Ramona REDMAN,[1] John Littleton,**
**Respondents.**

No. CS07–02770.

Family Court of Delaware,
Sussex County.

Submitted: Feb. 6, 2009.
Decided: April 15, 2009.

---

30. *Betts v. Townsends, Inc.* 765 A.2d 531 (Del. Supr., 2000).

1. Pseudonyms have been substituted for the names of the parties pursuant to Supreme Court Rule 7(d).

James S. Reichert, Esquire, Deputy Attorney General, Georgetown, DE, for the Petitioner.

Ashley M. Oland, Esquire, Law Office of Edward C. Gill, P.A., Georgetown, DE, for Ramona Redman; Patricia M. O'Neill, Esquire, Law Office of Patricia M. O'Neill, Georgetown, DE, for John Littleton.

## OPINION

HENRISKSEN, J.

The Division of Family Services has moved to quash a subpoena *duces tecum* issued at the request of Mother's attorney requiring a Division worker to bring with her to a dependency/neglect review hearing the following information:

1. Any and all records/reports/notices on [Mother] including but not limited to any and all information on contact or contact attempts with [Mother], any and all information pertinent to housing, employment, and any other element regarding [Mother's] case and progress on [Mother's] case plan.

2. Any and all information on visits, when they were scheduled and if they were held. Any and all information on contact with Jana Miller, Gail Beutler, and Officer Cox.[1]

For the reasons that will follow, the Court is granting the Division's Motion to Quash the subpoena which was issued pursuant to Family Court Civil Rule 45. However, noting the federal and state statutes and Family Court Rules that require dependency/neglect cases to be scheduled on an expedited basis, quite different from the scheduling of a traditional trial, and also noting the paramount interest involved of the safety and permanency for children, and the potential of reunification of those children with their parents, the Court will expect discovery requests for production of documents pursuant to Family Court Civil Rule 34 to henceforth proceed on an expedited basis.

### Background

Mother's minor child, hereinafter referred to as "Child", born 2006, was removed from Mother's care on October 05, 2007, due to a report from a neighbor that Mother was deficient in caring for her other 5 year old minor child.[2] Since that time, both Mother and Father have been working toward reunification with Child. Child is currently in the custody of the Division of Family Services of the State of Delaware, hereinafter referred to as "the Division"

On October 15, 2007, following a brief hearing, the Court determined that there was probable cause to find that the child would be dependent in Mother's care, and that it continued to be in the best interests of the child to remain in the custody of the Division. On December 03, 2007, the Court held its next hearing, where Mother waived her adjudicatory hearing by acknowledging that the Division could prove by a preponderance of the evidence that the children would be dependent if placed back into Mother's care.

---

1. Subpoena at 1, issued by Family Court, Sussex County, January 14, 2009.

2. As a result of this incident, Mother eventually pled guilty to Endangering the Welfare of a Child. This was Mother's second Endangering charge within a year.

The next hearing on Mother's case was a dispositional hearing held on January 28, 2008. At this hearing, the Court was presented a case plan signed by the Division and by Mother which set in place a course of action needed to be followed by both the Division and by Mother which hopefully would lead to the eventual reunification of the child and Mother when a time could be reached where the child would no longer be dependent or neglected if returned to Mother's care. Basically, the plan provided for visitation between Mother and Child. The plan also required Mother to maintain steady employment, attend parenting classes, undergo a mental health assessment and any recommended treatment, obtain stable housing, and comply with the terms of her probation.[3]

The Court brought the parties back to Court on May 05, 2008, for a review hearing. At such hearings, testimony is given by the Division worker or workers about Mother's progress in pursuing her case plan. The parents' attorneys are given the opportunity to cross-examine the worker. In this particular case, the child has been assigned a Court Appointed Special Advocate (CASA) whose attorney also is permitted to cross-examine the worker. The parents and the CASA may also give testimony. At each of these hearings, the Court also inquires about the safety and welfare of the child and what services are being provided to the child. At the hearing on May 05, 2008, the Division worker testified that Mother had completed her parenting course as well as her mental health assessment. Mother's employment was in question. Mother had also obtained a positive drug screen for cocaine, which would likely require Mother to be re-evaluated for her substance abuse as a condition of her probation. The Court also learned

that Mother was not taking the opportunity to exercise all of the visitation being offered to her by the Division.

The next review hearing occurred on August 25, 2008. At this hearing, the DFS worker informed the Court that Mother had held many different jobs, had not followed through with extra visitation, had taken a long time to get into mental health counseling, violated her probation, had been less than honest with the case worker, and was not returning telephone calls to the case worker or to the CASA. Of special concern was that Mother was residing in a home owned by her own mother and step-father. Although this home had previously been considered to be an appropriate place for Mother to live with the child, concerns had recently been disclosed about possible past inappropriate conduct of the step-father towards Mother when she was a minor.

Also of special note at the review hearing held on August 25, 2008, was the Division worker's lack of ability to apprise the Court of the date of when the mental health evaluation was completed on Mother, when the Division gave Mother information or made referrals on Mother's behalf so Mother could enter counseling, what efforts were made over the time period for Mother to obtain counseling, and why it has taken so long for Mother to get into counseling.

On November 03, 2008, the Court conducted a permanency hearing because of the considerable progress that Father was making on his case plan. The Court found that there were compelling reasons to continue the Division's efforts to attempt to reunify the child, especially with Father, where the Court found that reunification with Father was imminent. Although

---

3. The Court is limiting its discussion to how the hearings involved Mother, although the hearings also addressed similar areas for Father.

Mother had also made progress on her plan, the Division still had concerns. Contrary to the prior hearing, the Division worker was prepared to provide substantial details on the timeline of dates and opportunities provided to Mother so that she could obtain mental health services. Also, although previously accepting Mother's living arrangements with her mother and step-father, the Division now found that housing to be inappropriate since Mother had disclosed more information about inappropriate advances made to her by her step-father when she was 17 and again when she was 19.

The next hearing occurred on January 05, 2009. It was at this hearing that the issue now before the Court, that being issuing a subpoena *duces tecum* for the Division worker to bring her records to the hearing, first became relevant. There was a considerable amount of dispute about whether the DFS worker had provided the counseling agency with a copy of the psychological evaluation. Although Mother's attorney had issued subpoenas for the Division worker to bring to the hearing her notes and records, the Division worker did not bring these notes and records. As a result, the Division worker was unable to specifically answer whether or not she had provided the counseling agency with a copy of the psychologist's report. The Court's Order required the Division worker to provide within one week following the hearing to the Court, as well as to all counsel, copies of the Division worker's notes relevant to whether the Division worker ever provided a copy of the psychologist's report to the counseling agency.

At the conclusion of the hearing of January 05, 2009, as is the Court's practice in such cases, the Court established a future hearing date. Mother's attorney caused the subpoena *duces tecum* to be issued to the Division worker on January 14, 2009. The Division filed a Motion to Quash Mother's subpoena on February 06, 2009, in which the Division set forth several arguments in support of the Division's position. Mother's attorney responded to the motion on February 09, 2009, opposing the motion, and also asking the Court to hold the Division's attorney in contempt and assess monetary sanctions against Petitioner's attorney.[4] In response to Mother's request to hold Petitioner's counsel in contempt and assess sanctions, the Division filed a second pleading. It was in this second pleading that the Division set forth its best argument for granting the Division's Motion to Quash the subpoena *duces tecum* which had been issued to its Division worker.[5]

*Arguments and Reasoning*

The Division's Motion to Quash raised several arguments. The Division's attorney has already apologized to Mother's attorney for its suggestions that Mother's attorney had made no attempt to review the Division's file, and that if she had done so, the information would have been available to her. The Division's attorney has already also apologized for his assertion that Mother's attorney had allegedly ad-

---

4. At the next hearing, held March 09, 2009, the Deputy Attorney General representing the Division began the hearing by making a formal apology on the record to Mother's counsel for having made certain arguments which implied that Mother's counsel had never gone to the Division's office to review files, and also averring that Mother's counsel had stated that she never intended to go to the Division's office to review files.

5. Although Family Court Civil Rule 7 does not provide for a reply motion to an answer to a motion, the Court will give consideration to the additional argument raised by the Division because of the importance of resolving this issue for other and future hearings.

vised him that she would never come to the Division's office to review a file for this matter or any other.

The Division also argued that the case of *Law v. Developmental Child Care, Inc.*, 523 A.2d 557 (Del.Super.1987) prohibits the Division from releasing its records solely in response to a subpoena. Mother's attorney responded that the Law Court held that medical records of children in an abuse action are protected from disclosure where such disclosure could cause severe psychological and/or emotional damage to the children and their mother.[6] Mother's attorney noted that no children's records were requested under the subpoena. Also noted, the Division had not argued that disclosure of information in Mother's file would cause any psychological or emotional damage to anyone.

The Division also argued that Del.Code Ann. tit. 16, § 906(b)(18) and Del.Code Ann. tit. 29 § 9017(b) require the Division to maintain the confidentiality of any records generally. In fact, the clause in Title 16 states,

> To protect the privacy of the family and the child named in a report, the Division shall establish guidelines concerning the disclosure of information concerning the abuse and neglect involving a child. The Division may require persons to make written requests for access to records maintained by the Division. The Division shall only release information to persons who have a legitimate public safety need for such information or a need based on the health and safety of a child subject to abuse, neglect, or the risk of maltreatment, and such information shall be used only for the purpose for which the information is released.[7]

Mother's response was that there were no children whose interests require protection as a result of the present subpoena because no records containing information about Mother's daughter had been requested. Mother also stated that, since Mother was requesting her own records, concerns about her privacy would not relieve the Division of its obligation to comply with the subpoena. Mother noted that Title 29 states that the Division "shall have the discretion to release information from records to public and private agencies if it determines that such release will serve the best interest of the children in its care."[8] It is Mother's position that the Division had failed to show how the clause in Title 29 prohibited the Division from complying with the subpoena.

The Division's next argument was that federal law required the Division to maintain the confidentiality of its records in order to qualify for federal funding. In support of this argument, the Division cited 42 U.S.C. § 5106a(b)(2)(A)(viii), a subsection of the Adoption and Safe Families Act (ASFA), which requires all states asking for federal funds under the Act to prepare a plan which includes,

> (A) An assurance in the form of a certification by the chief executive officer of the State that the State has in effect and is enforcing a State law, or has in effect and is operating a statewide program, relating to child abuse and neglect that includes—
>
> (viii) methods to preserve the confidentiality of all records in order to protect the rights of the child and the child's parents or guardians, including requirements ensuring that reports and records made and

---

6. *Law v. Developmental Child Care, Inc.*, 523 A.2d 557 (Del.Super.1987).

7. Del.Code Ann. tit. 16, § 906(b)(18) (1999).

8. Del.Code Ann. tit. 29, § 9017(b) (1999).

maintained pursuant to the purposes of this subchapter and subchapter III of this chapter shall only be made available to-

(I) individuals who are the subject of the report;

(II) Federal, State, or local government entities, or any agent of such entities, as described in clause (ix);

(III) Child abuse citizen review panels;

(IV) Child fatality review panels;

(V) A grand jury or court, upon a finding that information in the record is necessary for the determination of an issue before the court or grand jury; and

(VI) Other entities or classes of individuals statutorily authorized by the State to receive such information pursuant to a legitimate State purpose.[9]

In Mother's opinion, she agreed that this subsection of ASFA directly supports Mother's argument requiring the State to make reports and records available to individuals who are the subject of the report.

The Division also cited 45 C.F.R. § 1340.14(i)(1), which states, "The state must provide by statute that all records concerning reports and reports of child abuse and neglect are confidential and that their unauthorized disclosure is a criminal offense."[10] As Mother stated time after time in her answer, Mother was not requesting any records involving reports of child abuse. Mother was simply requesting documents involving her case plan and records detailing the status of her treatment.

The Division then went on to aver that certain types of information obtained by the Division are independently entitled to protection from release. In support of this argument, the Division specifically cited Del.Code Ann. tit. 11 § 8513(d), which protects criminal records from release. Mother's response was that she was not seeking criminal records.

The Division also cited 42 U.S.C. § 290dd and 16 Del. C. § 2201, which the Division argued protects records of substance abuse treatment from release. Mother's response was that neither section mentioned release of information, and that the latter is a declaration of policy, providing for treatment of addicts in Delaware. The Division went on to cite 42 U.S.C. § 1320d-6, which discusses the penalties for violating the Health Insurance Portability and Accountability Act (HIPAA), Delaware Rule of Evidence 503, and 16 Del. C. § 5161, which discusses the rights of patients in mental health hospitals. Mother responded by noting that Mother, the patient, has requested and consented to the release of her own records.

The Division next averred that, in order for the Court to authorize the Division to release the records, Mother's attorney must first file a separate Motion for Release, demonstrating what records are needed and for what purpose the records are needed. In support of its argument, the Division cites a Family Court Decision rendered in 2004, by Judge Crowell.[11] It would appear to the Court that in Judge Crowell's Decision, which has been reported,[12] the Court found nothing supporting

---

9. 42 U.S.C. § 5106a(b)(2)(A)(viii) (2003).

10. 45 C.F.R. § 1340.14(i)(1).

11. *DFS v. Wallace & Dailey,* CN01–08078 (Del.Fam.Ct. Nov. 5, 2004).

12. *DFS v. C.W., J.D.,* 2004 WL 3625397 (Del. Fam.Ct.).

the Division's assertion that Mother needed to file a separate Motion for Release.

The Division's next argument was that the Division would be violating the rights of all persons whose information is contained in the records, including the fathers of Mother's children and anyone with whom Mother or the children have resided, if it were to release the records without first obtaining the consent of all the parties. Mother's response was that the Division had not provided any case law or statutory support for this specific argument. Mother also noted that she was not requesting any records involving persons other than her. Therefore, no rights of any other person were in danger of being violated.

The Division's next argument was that Mother's attorney could obtain the information she seeks directly from Mother's probation officer and the counselors, and that Mother's attorney has not explained why she has not done so. Mother responded that the Division had not provided any authority to support its implication that Mother was required to attempt to obtain these records directly from Mother's counselor before issuing a subpoena for the Division's file, or for the implication because she did not do so, the Division need not comply with the subpoena.

The Division's next argument was that state and federal law requires the Division to limit any disclosure of the records to the minimum necessary. The Division again cited Judge Crowell's Decision in *DFS v. C.W., J.D.* Mother avers that the Division has misinterpreted Judge Crowell's holding. Judge Crowell stated, "the Court agrees with DFS that both federal and state laws require that DFS protect the confidentiality of its records and make

them available, with few exceptions, only to those individuals who are the subject of the report." [13] Judge Crowell specifically held that individuals who are the subject of the reports in question, as Mother is in this case, are entitled under state and federal law to access DFS records of which they are subject.

The Division also argued that Mother's attorney had advised the Division that she would be demanding the entire file be made available to her under the subpoena. Mother countered noting that the subpoena clearly identified specific records Mother was requesting. The Division also suggested that Mother's subpoena should fail because the Division would make Mother's file available for inspection upon request and would even copy the pages needed for purposes of the case.

The final argument made by the Division in its original Motion to Quash was that, in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), the United States Supreme Court held that access to the type of records at issue here should be limited to *in camera* reviews at the Division's offices in order to protect the confidentiality of all persons discussed in the records. As Mother noted, the defendant in *Ritchie*, a case that involved a criminal defendant charged with abusing his minor daughter, requested the entire case file from the Department of Children and Youth Services (CYS) in order to search for potential witnesses and exculpatory evidence. [14] Mr. Ritchie's request was denied, and he was convicted, leading him to appeal his conviction, arguing that the Court's refusal to force CYS to allow him to review the file was a violation of the

---

13. *DFS v. C.W., J.D.*, 2004 WL 3625397, at *5 (Del.Fam.Ct.).

14. *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).

Confrontation Clause.[15] The United States Supreme Court found that no such violation occurred and that, due to privacy concerns related to the defendant's minor daughter, who was the subject of the file, CYS was under no obligation to turn the file over to the defendant.[16] Rather, the Ritchie Court found that the defendant was entitled to have the trial Judge conduct an *in camera* review of the file to determine whether its contents were material to the trial.[17] Mother averred that the Family Court in the case *sub judice* was not bound by the United States Supreme Court's ruling in the *Ritchie* case, since (a) the present case before the Court was not a criminal case, (b) there was no Confrontation Clause issue in this case, and (c) the facts of *Ritchie* do not mirror the facts of the instant case. Mother went on to again state that Mother was not requesting information about the minor child. Mother was only requesting records involving the status of her treatment and her case plan. Accordingly, the only individual whose privacy would require protection is Mother. Since Mother has consented to the release of these records, the United States Supreme Court's holding in *Ritchie* does not support the Division's position in the present matter.

## Court Concerns

Because of the strength of the final argument raised by the Division in the Division's additional pleading, made ostensibly in response to Mother's counsel's desire to hold the Division's counsel in contempt, it is unnecessary for the Court at this time to rule on any of the foregoing arguments.

The Court has been concerned for quite some time with the apparent practice of Division workers to come to Court to testify in a specific hearing about specific individuals, and about whether those individuals are complying with their case plans, but failing to bring with them their file so that they can provide accurate information when necessary. It is the Court's opinion that the failure of DFS workers to bring their files with them is a careless oversight. However, it seems to happen so frequently, that the Court must wonder if there does not exist a Division policy for the workers not to bring the file. If such a policy exists, the only justification the Court can imagine for such an approach would be based upon confidentiality issues of other persons named in the file which might be observed by a cross-examining attorney when the DFS worker must refer to his or her file because of his or her lack of present recollection. Given this need to protect confidentiality, the Division might argue that they would have to prepare each file in advance of coming to Court with various forms of redactions depending upon which parent or other individual was asking to see the file notes, and that this advance preparation would cause the Division workers an undue burden and expense. Against this argument, the parent's attorney holds up the need to give safety and permanency to children as well as giving to both children and parents the hope that they will be reunified. Given that balance, burden and expense versus children's permanency and children's and parents' reunification, the Court believes that the latter goal of permanency and reunification should prevail, and can still be accomplished without sacrificing the need for confidentiality.

The Court is also troubled by the present lack of a level playing field in these hearings, where the Division, the CASA,

**15.** *Id.*

**16.** *Id.*

**17.** *Id.*

and the Attorney Guardian ad Litem have in place mechanisms where they can obtain copies of records without difficulty, but where the attorneys for the parents must go through various obstacles in order to obtain information on behalf of their clients. Thus, the Division workers have the records at their fingertips. The Guardian ad Litem, and the CASA (Court–Appointed Special Advocate) whose duty is to the child in the representation of the child's best interest, have access to all DFS records regarding the child and his or her family.[18]

As already determined by Judge Crowell in *DFS v. C.W. J.D.*, the Division is required by both federal and state law to protect confidentiality of its records.[19] As opposed to giving the CASA and the AGAL access to DFS records of all parties, the Court also agrees with Judge Crowell's determination that the federal and state statutes and regulations require that DFS keep confidential information about one parent from the other parent,[20] and that it is not "unfair and without basis in law" to withhold from a parent the same right of access to DFS records enjoyed by the Guardian ad Litem or the CASA, where the Guardian ad Litem represents the best interest of the child and therefore stands in a different position than the parent. Like this Judge, Judge Crowell was "somewhat confused by DFS' argument related to the burden on case workers and on DFS' attorneys to release client records … [in that] it would be overwhelming to redact and produce client records in other cases."[21]

*Subpoena Duces Tecum of Party*

We now turn to the crux of the present question before the Court. The Division avers that a subpoena *duces tecum*, issued pursuant to Family Court Civil Rule 45, cannot be used to compel the production of documents in the hands of a DFS worker, where the Division is a party to the action. The Division bases its argument on long standing authority. In 1910 Judge Hastings of the Delaware Superior Court held that the use of a subpoena issued under Rule 45 "is applicable only to those who are not parties to the action."[22] Judge Hastings made reference to *Woolley On Delaware Practice*, at Section 573, under the head of "Subpoena *Duces Tecum*", where it is stated,

A subpoena *duces tecum* is a writ or process of the same kind as the subpoena *ad testficandum*, issued for the same purpose and an additional purpose of requiring the witness to bring with him and produce to the court books, papers or things, in his hand, tending to elucidate the matter in issue. This is the only method in most cases of obtaining the production of a document in the hands of a person not a party to the action. The production of documents in the possession of the adverse party cannot be compelled under a subpoena *duces tecum*. The right of one party to compel a production of documents held by the other party is a right, not of course, but subject to be contested, depending upon considerations to be in-

---

**18.** Del.Code Ann. tit. 29, § 9007A(c)(7).

**19.** *DFS v. C.W., J.D.*, 2004 WL 3625397 (Del. Fam.Ct.) (citing 42 U.S.C. § 5106a(b)(2)(A)(viii)); 45 C.F.R. § 1340.14(i)(1); Del.Code Ann. tit. 16 § 906(b)(18).

**20.** *DFS v. C.W., J.D.*, 2004 WL 3625397 (Del. Fam.Ct.) (citing 42 U.S.C. § 5106a(b)(2)(A)(viii)).

**21.** *Id.*

**22.** *Klair v. Philadelphia, B. & W.R. Co.*, 78 A. 1085 (Del.Super.1910).

quired of, and decided by the court before an order for production will be made.

Thus, as established by reference to *Woolley On Delaware Practice*, and cited in *Klair* in 1910, the established practice in the Delaware courts was to use a subpoena *duces tecum* to have a witness bring documents to court, but that such action was not applicable to those who are parties to the action. In order to compel a party to produce documents, the other party had to make a request for production of documents, subject to having objections raised to those production of documents decided by the Court before the documents must be produced.[23]

In the case of *Van Sant v. Ross*,[24] an action for alienation of affections before the Superior Court in 1961, Judge Lynch granted a plaintiff's motion to quash a subpoena *duces tecum* of a party which sought to compel that party to produce certain letters at trial. Citing back to both *Woolley* and the *Klair* case, Judge Lynch held that Rule 45(d) respecting production of documents through subpoena was not intended to include parties since that would make Rule 34 a nullity.[25] Judge Lynch noted "a sharp distinction is made in our discovery rules as to depositions between a party and a witness, as is evident from a comparison of Rule 34 and Rule 45(d), . . . ." He also emphasized the right of a party to have objections ruled

upon by the Court before having to abide by an Order for Production under Rule 34. Judge Lynch advised Courts "not [to] overlook or reject a well settled practice . . . in the absence of it clearly appearing that it was intended by the rules to change the practice." [26]

It is interesting to note, however, that Judge Lynch in the *Van Sant* case made reference to an unreported decision of former Supreme Court Chief Justice Christie, then acting as a Superior Court Judge, who ruled in Civil Action No. 1136, 1960, New Castle County, that it was "proper to utilize a subpoena *duces tecum* to compel a party to a case, who was also an officer of a corporate defendant to produce papers at the taking of a deposition, conceding that the papers would not be open to inspection by the adversary, but solely to enable the party/witness to answer questions propounded at the deposition." [27]

Finally, Judge Lynch's Opinion in *Van Sant* emphasized that a party should not be able to escape the "good cause" requirement of Rule 34, applying to parties, by instead using Rule 45.

The Court has reviewed the respective Family Court Civil Rules 34 and 45, and does not find any significant change in the present day Rules 34 and 45 from the practice originally set out in *Woolley*, and as eventually confirmed in the *Klair* and *Van Sant* cases.

---

**23.** Of interest in reading the Opinion in *Klair v. Philadelphia, B. & W.R. Co.*, is that the plaintiff party summoned an employee of the defendant party to bring certain papers to court. It appears that the defendant's employee brought the papers to court and gave them to the plaintiff prior to the hearing. The defendant party wanted the papers returned to the employee contending that "the papers should remain in possession of the witness *until he should be called to the stand* (emphasis added)."

**24.** *Van Sant v. Ross*, 171 A.2d 910 (Del.Super.1961).

**25.** *Id.*

**26.** *Van Sant v. Ross*, 171 A.2d 910 (Del.Super.1961) (citing *Empire Box Corp. v. Illinois Cereal Mills*, 90 A.2d 672, 677 (Del.Super.1952)).

**27.** *Id.* The Court attempted to retrieve a copy of Judge Christie's ruling, but without success.

The best argument that Mother could make in permitting her attorney to subpoena the DFS worker to bring records to the hearing would be the change of the timeline of the trial practice of the dependency/neglect case, which requires many and frequent hearings scheduled on an expedited basis during the course of a year's time, as opposed to the more traditional timeline where many months would transpire from the initial pleadings, through a sufficient time for discovery, to the final trial. Indeed, the Family Court Civil Rules of Procedure have enacted special rules to be sure that dependency/neglect cases move along quickly to comply with federal guidelines required under the Adoption and Safe Families Act of 1997 (ASFA).[28] Those Family Court Civil Procedure Rules, starting with Rule 212 through and including Rule 216, require within the course of an approximate one year time period a preliminary protective hearing, sometimes called probable cause, to be held within 10 days from the date the child is taken into care[29], and an adjudicatory hearing to occur 30 days later in order to determine whether or not the Division of Family Services can prove by a preponderance of the evidence that the child would be dependent or neglected if placed back into a parent's care.[30] Following the adjudicatory hearing there is a 30 day period in which a dispositional review hearing must occur to establish a case plan which sets forth the needs and requirements of the Division and Parent to successfully eventually reunify Child and Parent.[31] Every 90 days thereafter the Court is required to hold a review hearing to determine what progress is being made on the case plan.[32] Within one year from the date a child is taken into care for abuse, or within one year and sixty days from when a child is taken into care for reasons other than abuse, the Court must then hold a permanency hearing to determine whether the Division should continue to provide services to assist parents towards reunification, or, whether a different permanency plan should be pursued, such as termination of parental rights followed by adoption, guardianship, or an Alternate Planned Permanent Living Arrangement (APPLA).[33] Noting the speed in which these hearings move along causes one to question whether it continues to be reasonable to make the distinction in dependency/neglect cases between issuing subpoenas to require non-party witnesses to bring documents to a hearing as opposed to filing a request for production on parties subject to a Court ruling on any objections before the documents can be produced. Although time constraints in pursuing discovery through the Rule 34 requests for production may become very difficult for the parties and for the Court, the Family Court Rules as to production of documents for parties under Rule 34 and production of documents from witnesses under Rule 45 have not yet changed. Until the Judges of the Family Court determine that such a change is required, this Judge believes that the logic and reasoning set forth in the 1961 *Van-Sant* case is still good law.

As a result of this ruling, the Court anticipates that the parents' attorneys will likely start issuing Rule 34 Production of Documents immediately, accompanied by requests for expedited responses. Al-

**28.** 42 U.S.C. § 675 et Seq.

**29.** Family Court Civil Rule 212 (1999).

**30.** Family Court Civil Rule 213 (1999).

**31.** Family Court Civil Rule 214 (1999).

**32.** Family Court Civil Rule 215 (1999).

**33.** Family Court Civil Rule 216 (1999).

though Rule 34 generally allows a written response to be received within 30 days after service of a request, the Court will no doubt have to significantly shorten the time period for answering. Rule 34 permits the Court to modify the time for responding. The parent attorney who files such a request shall also be in a position, as set forth in the Rule, to "specify a reasonable time, place and manner of making the inspection and performing the related acts." [34]

Accordingly, the Division's Motion to Quash Mother's subpoena pursued under Rule 45 requiring the DFS worker to bring certain documents with her to the hearing is hereby **GRANTED.** Given the in-Court apology by the Division's attorney to Mother's attorney about certain rather careless allegations made in the Division's Motion to Quash, the Court accepts the Division's apology without the need for taking further action on the request of Mother's attorney to seek sanctions. As such, the request of Mother's attorney for sanctions is **DENIED.**

IT IS SO ORDERED.

---

**34.** Family Court Civil Rule 34 (1999).